709 A.2d 812

TIM BROWN AND LIZ BROWN, PLAINTIFFS, v. SELECTIVE IN-
SURANCE COMPANY, DEFENDANT–RESPONDENT, AND AT-
LANTIC EMPLOYER'S INSURANCE COMPANY, DEFEN-
DANT–APPELLANT, AND POLICY MANAGEMENT CORP.,
DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted March 24, 1998—Decided May 4, 1998.

Before Judges DREIER, KEEFE and WECKER.

*K. Ruth Larson,* attorney for appellant (*Ms. Larson,* on the brief).

*Boglioli & Mirra,* attorneys for respondent Selective Insurance Company of America (*Richard J. Mirra,* on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

The issue presented by this appeal requires an interpretation of *N.J.S.A.* 17:28–1.1c insofar as it addresses the rights of uninsured motorist (UM) carriers to pro rata contribution where a claimant has UM coverage "available" under more than one insurance policy. Specifically, the question presented is whether a UM carrier, providing UM coverage to the host vehicle, is entitled to pro rata contribution from the claimant's personal UM carrier where neither the claimant nor the host's UM carrier has given notice of the claim to the personal UM carrier in sufficient time for the personal UM carrier to protect its subrogation rights against the uninsured tortfeasor. We hold that the host carrier is not entitled to such contribution as a matter of right under *N.J.S.A.* 17:28–1.1c and affirm the judgment under review.

Plaintiff, Tim Brown, was employed as a police officer by the Edison Township Police Department on June 2, 1989.[1]  On that

---

[1] Liz Brown, Tim Brown's wife, sues *per quod.*  Because her suit is derivative of her husband's, all references herein are to plaintiff Tim Brown in the singular.

date, plaintiff stopped a motorist, later identified as John Garrett, while patrolling the Route 1 corridor in Edison. Plaintiff parked his squad car in the far right lane behind the motorist, exited his vehicle, and proceeded to approach the driver's side of the stationary automobile. While alongside of the stopped vehicle, Garrett allegedly thrust open the driver's side door, striking plaintiff. Subsequently, Garrett attempted to drive off, striking plaintiff a second time with the automobile and dragging plaintiff several feet. As a result of this accident, plaintiff allegedly sustained personal injuries. It was later discovered that Garrett was uninsured.

At the time of the accident, defendant Atlantic Employer's Insurance Company (Atlantic) insured Edison Township. During the same period, defendant Selective Insurance Company (Selective) provided insurance coverage, including UM coverage, to plaintiff for vehicles personally owned by him. Plaintiff apparently made a UM claim against Atlantic, which was denied for reasons not relevant to this litigation. Plaintiff, however, did not notify Selective of his UM claim until February 7, 1994, when his attorney wrote a claim letter to Selective. Selective denied coverage, claiming lack of proper notice and prejudice to its subrogation rights.

In the face of a denial of UM benefits from both Atlantic and Selective, plaintiff instituted suit against both insurers.[2] Atlantic moved for summary judgment, seeking a declaration that it did not cover plaintiff for UM benefits. Plaintiff cross moved for summary judgment, seeking a declaration of coverage only as to Atlantic. Judge Sullivan denied Atlantic's motion for summary judgment and granted plaintiff's motion. The order was entered on October 4, 1996.

---

[2] The complaint also sought coverage for an underinsured motorist claim arising out of an accident that occurred on July 17, 1990. That claim is not relevant to this appeal.

Selective then moved for summary judgment on the ground that plaintiff's failure to give notice of his UM claim to Selective irrevocably prejudiced Selective's subrogation rights. The motion was granted, and an order was entered on January 10, 1997. Atlantic appeals only from the judgment entered on January 10, 1997.

Atlantic argues on appeal that the trial court's decision to assign Atlantic the sole burden of providing UM benefits to plaintiff, "while forgiving Selective from its statutory obligation to provide similar coverage under a concurrent UM policy, falls in direct conflict with *N.J.S.A.* 17:28–1.1." Specifically, Atlantic points to the provisions of *N.J.S.A.* 17:28–1.1c, which requires proration among UM insurers who provide coverage for a particular claim, and contends that the dismissal of the plaintiff's suit against Selective "relieved Selective from fulfilling a statutory responsibility to contribute pro rata UM benefits to Plaintiff." We disagree with Atlantic's argument.

Atlantic is correct in stating that *N.J.S.A.* 17:28–1.1 contains the relevant statutory provisions regarding UM coverage. Nonetheless, the statute does not attempt to regulate all facets of that coverage. Thus, "[t]he overriding reality ... is that ... [the insured's] rights under a UM endorsement are governed by the contract with the UM carrier." *Riccio v. Prudential Property & Cas. Ins. Co.*, 108 *N.J.* 493, 499, 531 *A.*2d 717 (1987). The terms of the contract will govern so long as they are not in conflict with the provisions of the statute or its underlying policy. *See, e.g., Ciecka v. Transamerica Ins. Group*, 81 *N.J.* 421, 409 *A.*2d 272 (1979).

The Selective policy, as does the standard UM endorsement, requires that the claimant promptly notify Selective of the particulars of the accident for which the UM claim is made. One of the objects of the notice requirement is to preserve Selective's subrogation rights. Indeed, the Selective policy provides that the claimant "shall do ... [w]hatever is necessary to enable [Selective] to exercise [its] rights" with respect to subrogation. That require-

ment is in accord with our statutory law protecting an UM insurer's right of subrogation.

> Uninsured motorist coverage shall be subject to the policy terms, conditions and exclusions approved by the Commissioner of Insurance, including, but not limited to, unauthorized settlements, nonduplication of coverage, *subrogation* and arbitration.
>
> [*N.J.S.A.* 17:28–1.1d (emphasis added).]

It is undisputed in this case that plaintiff failed to give Selective notice of his claim for UM benefits until his attorney's letter of February 7, 1994, four years and eight months after plaintiff's accident. It is beyond dispute that Selective's subrogation claim against the uninsured motorist was by that time barred by the statute of limitations because of plaintiff's late notice. *See Rutgers Cas. Ins. Co. v. Vassas*, 139 *N.J.* 163, 169–170, 652 *A.*2d 162 (1995) (holding that the statute of limitations for a subrogation action begins to run at the same time as the limitations period for the underlying action). Plaintiff obviously recognized that principle and, for that reason, did not appeal from the order granting Selective's motion for summary judgment on his complaint against Selective seeking UM benefits. Even if plaintiff had appealed from that judgment, however, we have no hesitancy in stating that the Supreme Court's rationale in *Rutgers Cas. Ins. Co. v. Vassas, supra*, protecting a UIM insurer's right of subrogation, applies equally to a situation, such as this, where a UM claimant has failed to give notice in a timely fashion. *Ibid.* Indeed, the rationale protecting the subrogation rights of a UM insurer is even stronger than for a UIM insurer in light of the Legislature's specific recognition of that right in *N.J.S.A.* 17:28–1.1d.

█ We now turn to the dismissal of Atlantic's claim for contribution against Selective under *N.J.S.A.* 17:28–1.1c, in which Atlantic sought a pro rata share of any sum it may be required to pay plaintiff in arbitration.[3] The statute provides in part:

---

[3] We note that Atlantic did not specifically plead its statutory claim for pro rata contribution in its answer to plaintiff's amended complaint in which plaintiff sought UM benefits from Selective. It raised the issue, however, in opposition to

> If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total limits.
>
> [*N.J.S.A.* 17:281.1c.]

As this court pointed out in *Rutgers Cas. Ins. Co. v. Dickerson,* 215 *N.J.Super.* 116, 122, 521 *A.*2d 373 (App.Div.1987), "[w]hile the section establishes a substantive principle of law, it does not specify the procedure by which a carrier may assert its rights thereunder." *Dickerson* held that a UM insurer may be prohibited from obtaining its statutory share from another insurer where both it and the claimant failed to give the other UM insurer notice of the arbitration hearing. *Ibid.* The same principle applies here.

Although we are not informed of the precise date on which Atlantic received notice of plaintiff's UM claim against it, plaintiff's brief in the Law Division claimed that Atlantic was "on notice of plaintiff's claim virtually from its inception." Atlantic has not denied that contention. Thus, as in *Dickerson,* Atlantic had an opportunity to notify Selective of its intention to seek a pro rata share from Selective in any UM arbitration brought by plaintiff stemming from the 1989 accident. It failed to do so. Had Atlantic notified Selective of the claim, Selective would have had an opportunity to protect its subrogation rights against the uninsured motorist. Whether it would have done so is of no moment. The point is that Selective could not have claimed prejudice from plaintiff's failure to notify it in a timely fashion. Thus, because of Atlantic's failure to notify Selective, it is barred from seeking contribution under the provisions of *N.J.S.A.* 17:28–1.1c.

Affirmed.

---

Selective's motion for summary judgment. Thus, we consider the issue on its merits.