766 A.2d 1224 (2001)
337 N.J. Super. 360
Dale HALLION and Jerome Hallion, her husband, Plaintiffs/Respondents,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant/Appellant,
and
CNA Insurance Company, Defendant/Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 2001.
Decided March 1, 2001.
*1225 Kenneth J. Slomienski, Wallington, argued the cause for appellant.
Charles P. Ingenito, Mahwah, argued the cause for respondents Dale and Jerome Hallion (Mr. Ingenito, of counsel; Jeffrey Zajac, on the brief.)
Andrea L. Strack, Chatham, argued the cause for respondent CNA Insurance Company (Hardin, Kundla, McKeon, Porletto & Polifroni, attorneys; Ms. Strack, on the brief).
Before Judges WALLACE, Jr., CARCHMAN and LINTNER.
The opinion of the court was delivered by WALLACE, Jr., J.A.D.
Defendant Liberty Mutual Insurance Company (Liberty Mutual) appeals from the entry of a judgment compelling it to arbitrate plaintiff's underinsurance motorist claim (UIM). The judgment also provided that CNA Insurance Company (CNA) was not required to participate in the arbitration. On appeal Liberty Mutual contends that its insurance policy affords excess coverage to CNA's primary coverage policy, that it was not obligated to provide Longworth[1] notice to CNA, and that, in any event CNA was not prejudiced by the failure to receive Longworth notice. Further, Liberty Mutual raises for the first time on appeal plaintiffs failure to provide it with Longworth notice and therefore plaintiffs' claim should be denied. We affirm.
We are hampered somewhat by the sparse record on appeal. We glean the following facts from the record submitted. Plaintiff Dale Hallion[2] was involved in an automobile accident on November 7, 1995, while operating a vehicle owned by her daughter. There were two other vehicles involved in a chain collision accident, both insured by Allstate Insurance Company. The vehicle that struck plaintiff's vehicle was operated by Paula R. Scott who was struck from behind by a vehicle owned by Kessart Morrison. The liability coverage on the Scott vehicle was $15,000. Plaintiff was insured by Liberty Mutual and the vehicle she was driving was insured by CNA. The Scott and Henry vehicles were each insured by Allstate Insurance Company.
The Liberty Mutual policy provided UIM coverage in the amount of $500,000, while the CNA policy provided UIM coverage in the amount of $300,000.
Plaintiffs filed a complaint against Scott in 1996.[3] We are informed by plaintiffs' counsel that Scott failed to answer, and a default was entered. Although the case was not settled, plaintiffs executed a release on September 25, 1997. A proof hearing on the default was scheduled for November 20, 1997. Settlement discussions led to Scott's insurer offering to pay the full policy limit of $15,000 in settlement of the case. Plaintiffs' counsel accepted *1226 the offer. The next day, November 21, 1997, plaintiffs' attorney forwarded a Longworth letter to Liberty Mutual seeking consent to accept the settlement offer. However, unbeknown to plaintiffs' attorney, the motion judge prepared and entered an order on November 20, 1997, dismissing plaintiffs' complaint.
After receipt of the Longworth notice, Liberty Mutual retained Commercial Litigation to conduct an asset search of Scott. On December 22, 1999, Commercial Litigation reported that Scott did not appear to have any assets. Neither plaintiffs' attorney nor Liberty Mutual informed CNA of the settlement offer.
On December 2, 1997, plaintiffs forwarded to Liberty Mutual documentation containing all pertinent medicals and authorizations and requested that Liberty Mutual evaluate the records for a possible settlement of their UIM claim. Liberty Mutual set up a claim file.
On June 10, 1998, plaintiffs wrote to Liberty Mutual demanding arbitration within thirty days and giving notice to their arbitrator. Liberty Mutual failed to respond to this notice within the allotted time, but eventually appointed an arbitrator.
In April 1999, plaintiffs' attorney sent a letter to CNA advising it of plaintiffs' UIM claim and demanding arbitration. CNA set up a claim file. However, on July 19, 1999, CNA wrote to plaintiffs rejecting their UIM claim because neither plaintiffs nor Liberty Mutual informed it of the offer from the tortfeasor, and therefore, CNA was unable to protect its subrogation rights.
On September 9, 1999, plaintiffs filed a complaint and an order to show cause against Liberty Mutual and CNA seeking an order compelling defendants to be responsible for plaintiff's Dale Hallion's UIM claim and ordering arbitration. Thereafter, defendants submitted letter briefs in opposition to plaintiffs' request. The motion judge ordered all parties to appear on October 20, 1999, to show cause why the relief sought by plaintiffs should not be granted. On the return date of the order to show cause, plaintiffs' attorney failed to appear, and the motion judge decided to determine the matter on the papers.
CNA and Liberty Mutual each submitted letter briefs. Liberty Mutual essentially argued that CNA should provide the primary coverage with regard to plaintiffs' UIM claim and that Liberty Mutual was only responsible for any amount above the UIM policy limits of the host vehicle insured by CNA. Liberty Mutual's attorney acknowledged that he had conducted discovery from plaintiffs during the past ten months, obtained all necessary medical records, had scheduled a medical examination of Dale Hallion, and that the results of the asset search of the tortfeasor revealed no assets. Liberty Mutual argued that the failure to comply with the Longworth notice procedures did not prejudice CNA because any subrogation claim was worthless. Further, Liberty Mutual argued that if the motion judge decided in favor of CNA, the judge should find that Liberty Mutual is the excess carrier and dismiss the complaint as to Liberty Mutual.
CNA argued in its brief that consistent with case law, the failure of plaintiffs or Liberty Mutual to notify CNA of the settlement offer barred the UIM claim against CNA. In addition, CNA argued that its subrogation rights against the tortfeasor had been prejudiced.
The motion judge entered an order on November 10, 1999, partially granting plaintiffs' request. The judge ordered Liberty Mutual to arbitrate the matter and "be solely responsible for the entire award by virtue of their failure to place CNA on notice of the claim as required by law." The only reason given was a handwritten note at the bottom of the order that "CNA Insurance is not required to arbitrate this matter pursuant to the holding in Rivers v. Allstate Insurance Co., 312 N.J.Super. 379 [711 A.2d 974] (App.Div.1998)." This appeal followed. Liberty Mutual's motion to stay the arbitration pending appeal was denied.

*1227 I
Initially, we note the handling of this appeal was made more difficult because the motion judge did not explain the reasons for his decision. An articulation of reasons is essential to the fair resolution of the case. Failure to perform this duty "`constitutes a disservice to the litigants, the attorneys and the appellate court.'" Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980)(quoting Kenwood Assocs. v. Board of Adjustment of Englewood, 141 N.J.Super. 1, 4, 357 A.2d 55 (App.Div.1976)); see also CNA Insurance Companies v. Cave, 332 N.J.Super. 185, 753 A.2d 141 (App.Div.2000), certif. denied, 165 N.J. 678, 762 A.2d 659 (2000). Moreover, the problem is compounded here because there was no oral argument to assist in sorting out the record.
The motion judge did not explain why he ordered arbitration of plaintiffs' UIM claim solely against Liberty Mutual. The cryptic statement that CNA was not required to arbitrate this matter pursuant to Rivers v. Allstate Insurance Co., 312 N.J.Super. 379, 711 A.2d 974 (App.Div. 1998) failed to address the issue of whether CNA was prejudiced by the lack of proper Longworth notice. In Rivers, similar to the facts here, the insured reached a settlement with the tortfeasor before notifying the insurance carrier of her intent to accept the settlement. We held that plaintiff failed to advance any facts demonstrating a lack of prejudice to the insurer and therefore plaintiff was barred from claiming UIM benefits. Id. at 386, 711 A.2d 974.
However, we also noted:
We do not read the Supreme Court's opinion in [Rutgers Casualty Insurance Company v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995) ] to create a bright-line rule that the insured's failure to protect the insurer's right of subrogation amounts to prejudice per se, sufficient under all circumstances to deny the insured UIM benefits and excuse the insurer from its coverage obligation.

[Ibid.]
Consequently, the motion judge's reference to Rivers provides little guidance to his decision.
We turn now to Liberty Mutual's argument, raised for the first time on appeal that plaintiffs failed to give proper Longworth notice and therefore their UIM claim should be barred. We reject this contention.
Ordinarily we will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available "`unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Brown v. Township of Old Bridge, 319 N.J.Super. 476, 501, 725 A.2d 1154 (App. Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999) (citing Skripek v. Bergamo, 200 N.J.Super. 620, 629, 491 A.2d 1336 (App. Div.), certif. denied, 102 N.J. 303, 508 A.2d 189 (1985)). An appellate court will consider matters not properly raised below only if the issue is one "of sufficient public concern." Alan J. Cornblatt P.A. v. Barow, 153 N.J. 218, 230, 708 A.2d 401 (1998). Even if the matter satisfies that test, an appellate court should not consider the issue if the record before the court is not complete as to the newly-presented issue.
In light of the limited record below and the failure to provide oral argument to the litigants, we elect to consider Liberty Mutual's argument addressed to Longworth notice.
Judge Pressler, in Longworth, set forth the procedure to be followed to perfect a claim for UIM benefits when a settlement has been advanced by the tortfeasor in the underlying personal injury matter. Longworth v. Van Houten, supra, 223 N.J.Super. at 174, 538 A.2d 414. Our Supreme Court endorsed the Longworth procedure in Rutgers Cas. Ins. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995). The Court directed that when an insured under an insurance policy providing UIM benefits is involved in an accident, the insured must *1228 notify the insurer when suit is filed. Id. at 174, 652 A.2d 162. Then while the claim is pending if it appears that the tortfeasor's insurance coverage will not satisfy the insured's damages, notice again should be given to the insurer. Ibid. Thereafter, if the insured receives a settlement offer or an arbitration award that does not satisfy the insured's damages, then the insured should again notify the insurer of that fact. Ibid.
The Court further explained:
if the insured receives a settlement offer or arbitration award that does not completely satisfy the claim, because the tortfeasor is underinsured, the UIM insurer then has two options: offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit, in exchange for subrogation of the insured's rights against the tortfeasor; or, allow the insured to settle. In either case, the UIM insurer must further allow the insured the benefit of the UIM coverage. If the insurer does not respond within the time allotted for rejection of the award or settlement offer, the insured victim may, consistent with Longworth, supra, move for a declaratory ruling on order to show cause concerning the parties' rights and responsibilities. In this manner, the insured victim is afforded the protection and benefits of the tortfeasor's insurance coverage in addition to the insured's own UIM coverage. As well, the UIM carrier is able to weigh the relative merits of allowing its insured to settle and paying the difference in UIM benefits compared with paying its insured the settlement offer plus UIM benefits and itself maintaining a subrogation action against the tortfeasor.

[Ibid.]
Recently, we relied on Breitenbach v. Motor Club of America Insur. Co., 295 N.J.Super. 328, 334, 685 A.2d 36 (App.Div. 1996) and Rivers, supra, 312 N.J.Super. at 385-86, 711 A.2d 974, to hold that the UIM insurer is "entitled to protection against any prejudice it reasonably may have suffered" as a result of the unauthorized settlement by the insured with the tortfeasor, but absent prejudice, the insured "is not, however, entitled to a windfall." CNA Insurance Companies, supra, 332 N.J.Super. at 191, 753 A.2d 141. We concluded that under the factual circumstances, the record showed a lack of prejudice to the UIM insurer. Id. at 193, 753 A.2d 141.
In Breitenbach the plaintiff gave her UIM insurer notice of intent to settle for the tortfeasor's policy limits and that unless the insurer objected within thirty (30) days, he would accept the settlement and submit the UIM claim to the insurer. Breitenbach, supra, 295 N.J.Super. at 330, 685 A.2d 36. Prior to the expiration of the thirty (30) day period, plaintiff completed the settlement with the tortfeasor. Thereafter, the insurer refused to pay UIM benefits. Ibid. In the subsequent action by the insured against the UIM insurer, the motion judge dismissed the complaint, finding that plaintiff's failure to wait thirty days before settling with the tortfeasor irreparably prejudiced the UIM insurer's subrogation rights. We reversed because we found no prejudice to the UIM insurer. We explained:
While plaintiff settled with the tortfeasor within the thirty days, defendant never delivered a response within that period, either objecting to the settlement or offering to pay the settlement proceeds. Having not responded in writing within thirty days of receipt of plaintiff's notice, the carrier's right of subrogation cannot be deemed to have been compromised.

[Id. at 335, 685 A.2d 36.]
We reach the same result in the present case. Plaintiffs accepted the tortfeasor's settlement offer on November 20, 1999, and the judge dismissed the case the same day. Not realizing the judge would enter an order dismissing the action, plaintiffs' attorney gave the Longworth notice to Liberty Mutual the next day on November 21, 1999. This was a technical violation of *1229 the Longworth procedure. Liberty Mutual then conducted an investigation of the tortfeasor's assets and concluded that the tortfeasor had no assets worth litigating against. Further, at no time did Liberty Mutual claim the right of subrogation. More importantly, Liberty Mutual conducted discovery on plaintiffs' claim for UIM benefits and prepared for arbitration. Plaintiffs had clearly established that Liberty Mutual was not prejudiced by their failure to follow the Longworth procedure.
We add the following observation. In cases such as this where the insured receives an acceptable settlement offer from the tortfeasor at trial, the insured should ask the Law Division judge to withhold entering an order dismissing the complaint for thirty days or to include appropriate language in the order to protect the insured's UIM claim. This would permit the insured to comply with the Longworth procedure, and at the same time, permit the UIM carrier to determine within thirty days whether to offer the insured the settlement in exchange for subrogation of the insured's right against the tortfeasor, or permit the insured to accept the settlement.
Liberty Mutual next argues that its insurance policy only affords excess UIM coverage to plaintiffs. Specifically, Liberty Mutual contends that since Dale Hallion was the operator of a vehicle she did not own, the UIM coverage available with Liberty Mutual provides only excess coverage over the CNA's primary UIM coverage. We agree.
In Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 710 A.2d 412 (1998), the Court addressed the issue of UIM coverage under multiple insurance policies. In Magnifico, supra, plaintiff and her husband were passengers in a car owned and driven by Grace DeNichilo. 153 N.J. at 409, 710 A.2d 412. The DeNichilo vehicle collided with a vehicle driven by Frank Cameron and owned by Beverly Manning. The Manning vehicle was insured by State Farm Policy with a liability limit of $25,000.00. CSC Insurance Company insured the DeNichilo's car and provided UIM coverage of $250,000.00. Ibid. Plaintiff's own automobile policy was with Rutgers Casualty Insurance Company which provided UIM coverage of $100,000.00. Plaintiff's insurance policy provided a standard "other insurance" clause which stated "any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance." Id. at 414, 710 A.2d 412. Applying the clear and unambiguous language of the insurance contract, the Court held that the CSC policy provided primary coverage and the Rutgers policy provided excess coverage. Ibid.
Similarly, Liberty Mutual's policy provided to plaintiffs contained the standard "other insurance" clause similar to the policy in Magnifico, and the CSC policy of the host vehicle provided UIM coverage to Dale Hallion as a person "occupying" the covered vehicle. Applying the clear policy language, we conclude that CNA provided primary coverage and Liberty Mutual provided excess UIM coverage to plaintiffs.
Liberty Mutual also argues that it did not have the duty or the obligation to give Longworth notice to CNA. Liberty Mutual contends that the party seeking UIM coverage should have the obligation of notifying the primary provider of UIM benefits. In any event, Liberty Mutual argues that CNA was not prejudiced by the failure to receive timely Longworth notice.
Plaintiffs disagree and argue their only responsibility was to provide Longworth notice to their own insurer, Liberty Mutual. CNA argues that Liberty Mutual failed to give CNA Longworth notice and its lack of notice prejudiced its subrogation rights. Thus, CNA contends that it has no responsibility to provide UIM coverage.
It is obvious that plaintiff and Liberty Mutual failed to give Longworth notice to CNA. We must decide whether the injured party or the injured party's insurer has *1230 the responsibility of providing Longworth notice to the insurer of the host vehicle.
We have not found an appellate court decision on this issue. However, in a related area of uninsured motorist coverage, we determined that the duty to give notice is on the injured party's insurance company. Brown v. Selective Insurance Co., 311 N.J.Super. 210, 709 A.2d 812 (App.Div. 1998).
In Brown, the plaintiff was injured when he was struck by an uninsured vehicle in June 1989. Plaintiff's personal vehicles were insured by Selective Insurance Company (Selective) while Atlantic Employers Insurance Company (Atlantic) insured the vehicle plaintiff was operating, which was owned by Edison Township. Plaintiff made a demand for uninsured motorist coverage against Atlantic, which was denied. Neither plaintiff nor Atlantic notified Selective at that time. Approximately four years after the accident, plaintiff notified Selective of the uninsured motorist claim. Selective denied coverage due to improper notice and prejudice to its subrogation rights. Id. at 211-12, 709 A.2d 812. Plaintiff instituted suit against both insurers. On cross-motions for summary judgment, the trial judge held that Atlantic must provide coverage. The judge also granted summary judgment in favor of Selective for lack of timely notice. Atlantic appealed, claiming that Selective should have to contribute any sum it may be required to pay to plaintiff. We held that because Atlantic was aware of the UIM claim from its inception and failed to place Selective on notice of the claim, Selective was barred from seeking contribution. We reasoned that if Atlantic had notified Selective of the claim, Selective would have had an opportunity to protect its subrogation rights against the uninsured motorist. Id. at 215, 709 A.2d 812.
The notice issue has been addressed in the UIM context by the Law Division in Prudential Prop. & Cas. v. Keystone Ins., 286 N.J.Super. 73, 668 A.2d 92 (Law Div. 1995). In Prudential, the injured passenger's primary insurer brought a declaratory judgment action, seeking determination that it was an excess carrier as to liability for passenger's UIM benefits and that, Keystone Insurance, the insurer of the host vehicle involved in the accident, was the primary carrier. Id. at 74-76, 668 A.2d 92. Prudential had previously paid the UIM claim and sought reimbursement from Keystone. Keystone acknowledged that it provided primary UIM coverage to the injured passenger, but claimed that the failure to receive Longworth notice should bar any recovery under its policy. The trial court reasoned:
[I]n the normal situation, recovery of UIM benefits under Longworth depends upon notice to one's own UIM carrier that the tortfeasor has offered a settlement. In turn, if the noticed carrier takes the position that its policy is excess or "co-primary" it, not the insured, has the duty to relay that notice to the alleged primary carrier promptly, and provide that carrier reasonable time to consent or to tender the settlement amount to protect its subrogation rights. In that fashion the excess carrier takes both the responsibility and the risk attendant to the protection of its own interest. I recognize that sorting out the primary-excess issue may well require more time than the presumptive 30 day notice period set forth in Longworth. Therefore, the carrier claiming coverage as excess should also promptly alert its insured of its position and of the potential delay necessary to resolve this additional issue. An unreasonable delay, however, would allow the excess carrier either to consent or to tender a matching offer without prejudice to its rights over against the primary carrier. Failure on the part of the injured claimant's own carrier to relay notice to the alleged primary carrier would, in most cases, be fatal to its right to recover UIM benefits paid to its insured.

[Id. at 77-78, 668 A.2d 92.]
We are in complete accord with the analysis and conclusion in Prudential. We *1231 hold that as between the insured and the insured's carrier, the insured's carrier has the responsibility to provide Longworth notice to the primary carrier. Therefore, when an insured under a policy providing UIM benefits is involved in an accident and has undertaken legal action against the tortfeasor, the insured must provide Longworth notice to his or her insurance carrier. In turn, the insured's carrier is responsible for providing Longworth notice to any asserted primary carrier. To be sure, the better practice is for the insured to provide Longworth notice to all potential UIM providers. However, the ultimate responsibility is upon the UIM insurer to give Longworth notice to the primary carrier.
Lastly, we turn to Liberty Mutual's argument that despite the failure to give timely Longworth notice to CNA, CNA suffered no prejudice. Specifically, Liberty Mutual asserts that the investigation performed by Commercial Investigations indicated that the tortfeasor Scott owned no property and had no employment history is evidence that CNA was not prejudiced. CNA disputes this contention and points to other evidence in the report which appeared to demonstrate that Scott was employed. CNA argues that it was foreclosed from its right to investigate Scott's employment status and pursue subrogation.
We are satisfied that Liberty Mutual failed to establish that CNA was not prejudiced. CNA has advanced sufficient reason to counter Liberty Mutual's attempt to demonstrate lack of prejudice. Moreover, the substantial period that elapsed between the date that the underlying matter was settled on November 20, 1997, until notice of the settlement was provided to CNA in April 1999, weighs heavily in favor of rejecting Liberty Mutual's claim of no prejudice. See generally, Rivers v. Allstate Ins. Co., 312 N.J.Super. 379, 711 A.2d 974 (App.Div.1998) and Rutgers Cas. Ins. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995).
Affirmed.
NOTES
[1] Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988).
[2] Plaintiff in the singular applies to the injured plaintiff Dale Hallion.
[3] The record does not reflect whether Georgia M. Henry, the operator of a third vehicle, was included in the action.