868 A.2d 1132

JOHN J. MORONEY AND MARY T. MORONEY, PLAINTIFFS–
RESPONDENTS, v. DIRECTOR, DIVISION OF
TAXATION, DEFENDANT–APPELLANT.

THOMAS J. DENITZIO AND SUSAN B. DENITZIO, PLAINTIFFS–
RESPONDENTS, v. DIRECTOR, DIVISION OF TAXATION,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued (A–3424–03T1) January 3, 2005—Argued (A–2423–
03T1) February 14, 2005—Decided March 14, 2005.

Before Judges LINTNER, PARKER and YANNOTTI.

*Mala Narayanan,* Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Ms. Narayanan,* on the brief).

*Nathan G. Fink,* argued the cause for respondents John J. Moroney and Mary T. Moroney in A–3424–03T1.

*Thomas J. Denitzio,* pro se, respondent, in A–3423–03T1.

The opinion of the court was delivered by

YANNOTTI, J.A.D.

These related appeals concern the manner in which net gain from the sale or disposition of rental property should be determined under the New Jersey Gross Income Tax Act, *N.J.S.A.* 54A:1–1, *et seq.* The Act provides in pertinent part that, in determining net gain or loss, the basis of the property shall be the adjusted basis used for federal income tax purposes. *N.J.S.A.* 54A:5–1(c). Relying upon the Supreme Court's decision in *Koch v. Director, Division of Taxation,* 157 *N.J.* 1, 722 *A.*2d 918 (1999), the Tax Court held that the federal adjusted basis must be increased by the cumulative amount of the allowed and allowable depreciation deductions that were not utilized by the taxpayers in computing net income from the respective properties in the years of their ownership. The judge further determined that the basis adjustment is the amount of the depreciation deductions that were not used to offset gross receipts after first deducting operating expenses in each tax year. *Moroney v. Director, Division of Taxation,* 21 *N.J. Tax* 220, 229 (Tax Ct.2004).

Based on these conclusions, the Tax Court entered a judgment setting aside a deficiency assessment issued by the Director of the Division of Taxation to plaintiffs John J. Moroney and Mary T. Moroney, and a judgment ordering the Director to refund taxes previously paid by plaintiffs Thomas J. Denitzio and Susan B. Denitzio. The Director appeals. We consolidate the appeals for purposes of decision and now affirm the Tax Court's judgments.

I.

In 1986, the Moroneys acquired certain real property in Hillsdale, New Jersey at a price of $327,399. The Moroneys sold the

property in 1994 for $245,000. On their New Jersey gross income tax return for the 1994 tax year, the Moroneys reported a loss on the sale of the property in the amount of $82,399, which was the difference between the purchase price and the amount received for the sale. The Moroneys used the cost of the property as the basis for determining gain or loss from the sale because, in each year that they owned the property, operating expenses exceeded rental income from the property.

The Director determined, however, that the adjusted basis of the property was $274,073 and the cumulative allowed and allowable depreciation on the property for the period of the Moroneys' ownership was $104,330, resulting in a final adjusted basis in the amount of $169,743. The Director subtracted that amount from the sales price of $245,000 and found that the Moroneys realized a net gain of $75,257, requiring the payment of additional taxes in the amount of $10,484.

The Denitzios purchased rental property in Westfield, New Jersey in 1985. They sold the property in 1995 for $265,000. The Denitzios filed a New Jersey gross income tax return for the 1995 tax year in which they reported that the adjusted basis of the property was $143,367 and the gain from the sale was $121,633. The basis reported by the Denitzios on their 1995 tax return was the adjusted basis used for federal income tax purposes, which was computed by reducing the cumulative amount of the deductions for depreciation that were allowed or allowable in the years in which the Denitzios owned the property. In 1999, the Denitzios filed an amended return in which they re-calculated and reduced the gain on the property to $49,640 by adding back an amount equal to the depreciation expense that they claimed had not been utilized in determining net income from the property. The Denitzios sought a tax refund in the amount of $4,849.

The Director granted the Denitzios a partial refund. The Director agreed that the federal adjusted basis of the property should be adjusted by adding the cumulative amount of depreciation expense that was not utilized by the taxpayers while they owned the property. According to the Director, the amount of

depreciation that was not utilized is the amount by which depreciation exceeds gross receipts in any given tax year. The Director found that, because the Denitzios reported depreciation that exceeded gross receipts for all years other than 1992, 1993 and 1994, they only enjoyed a tax benefit from depreciation expense in those three tax years in the cumulative amount of $9,928. The Director therefore granted a refund in the amount of $64 and denied the balance of the claim.

The taxpayers filed timely challenges to the Director's determinations and the Tax Court reversed. In an opinion addressing both appeals, the judge noted that the Director had recognized that *Koch* required adjustments to the federal adjusted basis to reflect the amount of depreciation that was not used by the taxpayers for New Jersey gross income tax purposes. *Moroney, supra,* 21 *N.J. Tax* at 226. The judge found, however, that the Director's method for computing unused depreciation was inconsistent with the "essence" of the *Koch* decision. As the judge noted, under the Director's approach, depreciation is the first deduction from gross receipts. The judge explained that, by calculating unused depreciation in that manner, the taxpayer "derives a tax benefit from depreciation up to the amount of gross income, but no tax benefit from depreciation in excess of gross income." *Ibid.* The judge concluded that *Koch* required that, in computing the amount of the adjustments, the first deduction from gross income should be out-of-pocket expenses. Therefore, the amount of unutilized depreciation is the cumulative amount of allowed or allowable depreciation that offsets income remaining *after* deduction of operating expenses in each tax year. *Id.* at 229.

The Director appeals and argues that *Koch* does not require an adjustment to the federal basis for unutilized depreciation deductions. The Director further contends that the Tax Court erred in rejecting his approach for the calculation of unused depreciation.

## II.

The Act provides for the imposition of a tax upon certain specified categories of income, including net gains or income from

the sale or disposition of property, "as determined in accordance with the method of accounting used for federal income tax purposes." *N.J.S.A.* 54A:5–1(c). The Act further provides that, for purpose of determining gain or loss, "the basis of property shall be the adjusted basis used for federal income tax purposes." *Ibid.* In addition, "net gains or income" from the disposition of property does not include gains or income to the extent to which non-recognition is allowed for federal income tax purposes. *Ibid.*

In *Walsh v. State, Div. of Taxation,* 10 *N.J. Tax* 447 (Tax Ct.1989), *aff'd o.b.,* 240 *N.J.Super.* 42, 572 *A.*2d 222 (App.Div.1990), the Tax Court considered whether the net gain from the sale of stock in three Subchapter S corporations should be determined by using the taxpayer's cost basis, without a reduction for corporation losses, or the federal adjusted basis, which is the cost of the stock reduced by the corporate losses. *Id.* at 448. The Tax Court concluded that the use of the federal adjusted basis was not required by *N.J.S.A.* 54A:5–1(c). *Id.* at 462.

The Tax Court in *Walsh* noted that, for federal tax purposes, losses of a C corporation are deductible by the corporation, not its shareholders, whereas losses of an S corporation are passed through to the shareholders, who may deduct the losses on their personal income tax returns. New Jersey does not recognize S corporations. Consequently, losses of an S corporation must be reported by the corporation on its New Jersey corporation business tax return and shareholders of an S corporation may not deduct corporate losses on their New Jersey gross income tax returns. *Id.* at 456.

In view of this treatment of S corporation losses for New Jersey tax purposes, the Tax Court in *Walsh* rejected the Director's position that *N.J.S.A.* 54A:5–1(c) mandated the use of the federal adjusted basis for determining the net gain from the sale by a stockholder of S corporation stock. The Tax Court judge noted that the Act imposes a tax on fourteen categories of income, some of which are taxed on gross income and some of which are taxed on net gain. *Id.* at 459–60. Because *N.J.S.A.* 54A:5–1(c) imposes

a tax on net gain from the sale or disposition of property, this section of the Act reflects an intent on the part of the Legislature to "tax only those transactions from which an individual derives an economic gain." *Id.* at 460. The judge explained, "The net gains concept is an expression of the difference between the cost of the property and the amount realized from the sale, which is the accession to wealth." *Ibid.* The federal adjusted basis is calculated by reducing the taxpayer's basis by the amount of the S corporation losses. Consequently, use of the federal basis increased the gain for New Jersey Tax purposes even though the taxpayer derived no tax benefit from the loss. *Id.* at 461. The result was, in effect, a tax on the return of capital that was not intended by the Legislature. *Ibid.*

The *Walsh* Court also noted that use for New Jersey tax purposes of the federal adjusted basis to determine the net gain from the sale or disposition of S corporation stock is consistent with the provision in *N.J.S.A.* 54A:5-1(c), which requires that such gain be determined "in accordance with the method of accounting allowed for federal tax purposes." *Ibid.* The court explained that, under federal methods of accounting, when losses are not passed through to stockholders, the basis of the stock is not reduced by the amount of the losses. Therefore, gain is measured by the difference between the cost of the stock and the proceeds received from its sale. *Ibid.*

The Supreme Court reached essentially the same conclusion in *Koch, supra,* 157 *N.J.* at 8–11, 722 *A.*2d 918. The Court held that *N.J.S.A.* 54A:5-1(c) did not require the use of the federal adjusted basis for purposes of determining the net gain from the sale of a partnership interest. *Id.* at 11, 722 *A.*2d 918. Koch purchased an interest in a partnership for $75,000 in cash and his agreement to assume responsibility for certain partnership debt. In the period that he held his interest in the partnership, the taxpayer had been allocated certain partnership losses. Because the losses had been deducted on Koch's federal income tax returns, the basis of the

partnership interest for federal tax purposes was zero. *Id.* at 4, 722 *A*.2d 918.

Koch sold his interest in the partnership for $125,000, plus a constructive payment that eliminated his liability for the partnership debt. The partnership losses were not deductible on Koch's New Jersey gross income tax returns. Because his federal adjusted basis in the partnership interest was zero, Koch reported the entire amount as taxable income for federal tax purposes. However, on his New Jersey gross income tax return, Koch only reported a gain of $50,000, which was the difference between the amount Koch spent to purchase the partnership interest ($75,000) and the amount he received on its sale ($125,000). *Ibid.*

The Court in *Koch* adopted the reasoning of the *Walsh* opinion and stated that in *N.J.S.A.* 54A:5–1(c), the Legislature intended only to tax gain, not a return of capital. *Id.* at 8, 722 *A*.2d 918. Like the S corporation losses at issue in *Walsh,* Koch's partnership losses were not deductible on his New Jersey gross income tax returns. Thus, "[a]ny income tax imposed on an amount greater than Koch's economic gain of $50,000 constitutes a tax on amounts that represent neither economic gain nor recovery of a past tax benefit. Instead, it represents a tax on a return of capital. Such a result was not intended by the Legislature." *Id.* at 9, 722 *A*.2d 918.

The *Koch* Court further explained that use of the federal adjusted basis for New Jersey tax purposes was not consistent with the method of accounting allowed for federal tax purposes, which requires a reduction of basis only if the losses were passed through to a partner. Because the pass-through had not been recognized for New Jersey tax purposes, the federal method of accounting did not require use of Koch's federal adjusted basis to compute his gain. *Id.* at 11, 722 *A*.2d 918.

The Director argues that *Koch* should not be applied to depreciation deductions. The Director contends that, unlike the partnership losses at issue in *Koch,* and the S corporation losses involved in *Walsh,* depreciation is a deduction that is allowed for purposes

of determining the net income derived from rental property under the act.

Initially, we note that the Director did not make this argument in the Tax Court. Indeed, as judge pointed out in his opinion, shortly after *Koch* was decided, the Director publicly announced that the Division of Taxation was not taking "such a narrow view." *Moroney, supra,* 21 *N.J. Tax* at 226 (quoting from the *State Tax News,* Summer 1999). Two years later, the Director asserted that the taxpayer who sells rental property is "entitled to a *Koch* type basis adjustment, but only in those instances where gross income before expenses or deductions (gross receipts) does not exceed depreciation expense allowed or allowable in the same year." *Ibid.* (quoting from the *State Tax News,* Summer 2001). The Director's final determinations at issue here, denying the Moroneys a basis adjustment and granting a partial refund to the Denitzios, were in furtherance of this publicly announced policy. Consequently, the issue raised and decided in the Tax Court was not whether *Koch* required a basis adjustment but whether the Director erred in calculating the amount of the adjustment. Advancing what he calls an "alternative" argument for reversal of the Tax Court's judgments, the Director now contends that *Koch* does not apply to depreciation.

We ordinarily decline to consider an issue that was not properly presented to the trial court unless the issue goes either to the jurisdiction of the trial court or concerns a matter of considerable public importance. *Hallion v. Liberty Mutual Ins. Co.,* 337 *N.J.Super.* 360, 367, 766 *A.*2d 1224 (App.Div.2001)(citing *Brown v. Township of Old Bridge,* 319 *N.J.Super.* 476, 501, 725 *A.*2d 1154 (App.Div.), *certif. denied,* 162 *N.J.* 131, 741 *A.*2d 99 (1999)). Because the issue of *Koch's* applicability to depreciation deductions affects not only the plaintiffs but other similarly situated taxpayers, we are satisfied that the issue is of sufficient public concern to permit the Director to argue the point on appeal. We conclude, however, that the Director's initial position on the issue is the correct one.

Pursuant to 26 *U.S.C.A.* § 167(a), a taxpayer is permitted a depreciation deduction for the "exhaustion, wear and tear" of property used in a trade or business, or property held for the production of income. When the property is sold, the gain derived from the sale is determined by the difference between the proceeds of sale and the adjusted basis of the property. 26 *U.S.C.A.* § 1001. For federal tax purposes, the basis of property is its cost, except as otherwise specifically provided. 26 *U.S.C.A.* § 1012. Adjustments to basis are prescribed by 26 *U.S.C.A.* § 1016 and these include an adjustment for "exhaustion, wear and tear, obsolescence, amortization and depletion" to the extent allowed as deductions in computing taxable income "but not less than the amount allowable" under the Internal Revenue Code. 26 *U.S.C.A.* § 1016(2).

The federal adjusted basis therefore is calculated by deducting the cumulative amount of allowed or allowable depreciation deductions that were available to the taxpayer during his or her ownership of the property. *See Hinckley v. Comm'r of Internal Revenue,* 410 *F.*2d 937, 940 (8th Cir.1969) (requiring reduction of taxpayer's basis in property by the amount allowed each year, even though taxpayer received no tax benefit because he failed to claim deduction); and *Comm'r of Internal Revenue v. Kennedy Laundry Co.,* 133 *F.*2d 660, 662 (7th Cir.), *cert. denied,* 319 *U.S.* 770, 63 *S.Ct.* 1434, 87 *L.Ed.* 1718 (1943)(concluding that basis must be reduced by the amount of depreciation that taxpayer could have taken even though the taxpayer did not have sufficient income against which to apply the depreciation deduction).

■ We are convinced, however, that the use of the federal adjusted basis here would be inconsistent with *Koch.* In each of the years that the Moroneys owned the rental property, their expenses exceeded gross receipts. Therefore, they did not obtain any benefit for New Jersey tax purposes from the depreciation deductions. Similarly, the gross receipts from the Denitzios' property exceeded expenses in only three years. Thus, the Denitzios realized a tax benefit from depreciation only in those three

years. Reducing basis by the cumulative amount of allowed and available depreciation results in a corresponding increase in the net gain from the sale that does not reflect the recovery of a tax benefit actually realized or an economic gain. In these circumstances, use of the federal adjusted basis would result in the imposition of a tax upon a return of capital contrary to the intent of the Act as interpreted in *Koch*.

In our view, the fact that depreciation expense is an allowed deduction for purposes of computing New Jersey net income from property while the losses at issue in *Koch* and *Walsh* are not deductible is not dispositive. According to *Koch*, the key question is whether the taxpayer has realized a tax benefit from the deduction in computing taxes due under the Act. When the depreciation deduction does not affect whether the taxpayer earned net income from the property, the taxpayer does not realize a benefit from the deduction. We therefore conclude that imposition of a tax upon the sale and disposition of plaintiffs' properties employing the federal adjusted basis would be inconsistent with *Koch*.

### III.

The Director next argues that, if *Koch* applies to depreciation, his method for determining the amount of the adjustment for unused depreciation should prevail over the method adopted by the Tax Court judge. The Director maintains that he has authority under the Act to determine the priority in which deductions are applied when calculating net gain from the sale or disposition of property. He further contends that the Tax Court should have deferred to his interpretation and application of the Act.

We have recognized that the Director has expertise, "particularly when exercised in the specialized and complex" area covered by the Act. *Reck v. Director, Div. of Taxation*, 345 *N.J.Super.* 443, 446, 785 *A.2d* 476 (App.Div.2001), *aff'd*, 175 *N.J.* 54, 811 *A.2d* 458 (2002)(citing *Metromedia, Inc. v. Director, Div. of Taxation*, 97 *N.J.* 313, 327, 478 *A.2d* 742 (1984)). Moreover, we

will defer to the interpretation of a statute by the agency charged with its enforcement if the interpretation is reasonable. *Smith v. Director, Div. of Taxation,* 108 *N.J.* 19, 25, 527 *A.*2d 843 (1987). However, the judiciary has final authority on all issues of statutory interpretation. *Koch, supra,* 157 *N.J.* at 8, 722 *A.*2d 918. We are satisfied that deference to the Director's assertion of authority to prioritize deductions for purposes of determining net gain derived from the sale of property under the Act is not warranted here.

Notwithstanding his arguments to the contrary, the Director does not have specific statutory authority under the Act to prioritize the deductions for purposes of computing taxable gain of the sort at issue in these cases. The Director relies here, as he did in the Tax Court, upon language in *N.J.S.A.* 54A:5–1(c), which provides that basis for measuring gain from the sale or disposition of shares of S corporation stock shall be "subject to rules of priority and assignment determined by the [D]irector." However, as the Tax Court correctly found, that statutory language applies solely to determining the basis for S corporation stock. *Moroney, supra,* 21 *N.J. Tax* at 231. There is no other language in *N.J.S.A.* 54A:5–1(c) expressly authorizing the Director to prioritize and assign deductions for purposes of determining basis for the sale and distribution of other types of property, such as the rental property involved here.

Furthermore, as the Tax Court found, the Director's methodology ignores the essential point of the *Koch* decision. The gain that results by first deducting depreciation and then operating expenses is fictitious gain. When a taxpayer has incurred out-of-pocket expenses that exceed gross receipts from the property, the taxpayer has no taxable net income, regardless of whether the taxpayer has a depreciation deduction that also could be applied to offset gross receipts. Even so, the Director's methodology assumes that the taxpayer has "used" the depreciation deduction. The resulting increase in the net gain derived upon the sale of property therefore is not based on economic gain. Rather, it is based on the putative return of a fictitious tax benefit. The result

is flatly inconsistent with *Koch's* mandate that the New Jersey tax not be imposed on "fictitious income." *Koch, supra,* 157 *N.J.* at 9, 722 *A.*2d 918.

We also are unconvinced by the Director's contention that the Tax Court erred in according priority to operating expenses in determining the amount of unutilized depreciation because depreciation is treated the same as operating expenses when determining the net income or loss derived from the property. As the Tax Court recognized, depreciation is merely an accounting expense. *See Hawkins v. Commissioner,* 713 *F.*2d 347, 351 (8th Cir.1983)(stating that depreciation is an "accounting device intended to allocate the cost of using an asset to periods in which that use contributes to revenue . . . ."); *Fribourg Navigation Co. v. Commissioner,* 383 *U.S.* 272, 276, 86 *S.Ct.* 862, 865, 15 *L.Ed.*2d 751, 754 (1966) (noting that depreciation of an asset through wear and tear or gradual expiration of useful life is an "established concept" of tax accounting). Because *Koch* determined that the Act requires imposition of a tax on economic gain, rather than fictitious income, we are satisfied that the Tax Court's methodology appropriately accords priority to actual out-of-pocket expenditures before recognition of an accounting deduction such as depreciation.

The Director contends that the judge erred by looking to certain provisions of the federal tax code as support for his method of computing unutilized depreciation. In *Koch,* the Court explained that other methods of accounting, recognized for federal tax purposes, may be considered in determining the manner in which net gain from the sale of property should be calculated under the Act. *Koch, supra,* 157 *N.J.* at 11, 722 *A.*2d 918. In his decision, the judge found support for his methodology in 26 *U.S.C.A.* § 469, 183 and 280A.

Under 26 *U.S.C.A.* § 469, a taxpayer engaged in a "passive activity" is allowed to "suspend" a "passive activity loss" that is not used in a particular tax year. According to the judge, the suspended loss "may be used to reduce the gain resulting from a

sale of the property." *Moroney*, 21 *N.J. Tax* at 230. The judge stated that, pursuant to 26 *U.S.C.A.* § 469, "a taxpayer incurring a loss from which the taxpayer received no tax benefit in a particular tax year has the opportunity to use the loss to offset gain at the time of sale of passive activity property." *Ibid.*

The judge reasoned that the "same result" applies under his interpretation of *N.J.S.A.* 54A:5–1(c) because

operating expenses are the first deduction from operating income, followed by depreciation. To the extent depreciation does not offset income, depreciation produces no tax benefit and does not reduce basis under the GIT Act. This non-reduction of basis is equivalent to allowing a depreciation deduction, from which the taxpayer received no tax benefit, to be suspended and subtracted from gain at the time of sale of a property.

[*Ibid.*]

We agree that the effect of the judge's methodology is to allow something like the "suspension" of "passive activity losses" under 26 *U.S.C.A.* § 469. By first deducting operating expenses from gross receipts, the Tax Court's method allows a "suspension" of unused depreciation that may be applied as an adjustment to the federal adjusted basis upon the sale of the property. Even so, we are convinced that the treatment of "passive activity losses" under 26 *U.S.C.A.* § 469 provides little support for the Tax Court's decision in this case.

First, although "passive activity losses" may be carried forward and applied against "passive activity gains" in future tax years, the carry-forward is not used as a basis adjustment for properties sold. Second, under 26 *U.S.C.A.* § 469, there is no prioritization of operating expenses for purposes of determining the amount of any carry forward of "passive activity losses." Third, and most important, the Act expressly bars any carry forward of losses into another tax year. *N.J.S.A.* 54A:5–2. Therefore, we agree with the Director that although 26 *U.S.C.A.* § 469 may be a method of accounting recognized for federal tax purposes, the treatment of passive activity losses under that provision of the federal tax code provides little guidance for determining whether operating ex-

penses should be the first deduction in the calculation of the amount of unused depreciation.

That same conclusion applies to 26 *U.S.C.A.* § 183 and 26 *U.S.C.A.* § 280A. These statutes assign depreciation a deduction priority behind that of operating expenses for purposes of determining taxable income in certain circumstances. However, as the Tax Court judge recognized, these provisions of the federal tax code do not apply to determining net income derived from the rental of residential properties of the sort at issue in these cases. *Moroney, supra,* 21 *N.J. Tax* at 231. Section 183 applies to activities that are not engaged in for profit. Section 280A applies to residential real estate that is used in part for business purposes. Because of the limited contexts in which these statutes are applied, we are convinced that these provisions of federal tax law do not shed any light upon the manner in which the amount of unused depreciation should be computed for New Jersey gross income tax purposes.

We believe that the judge erred in looking to 26 *U.S.C.A.* §§ 469, 183 and 280A as support for his decision. However, we are convinced that the judge's reliance upon these provisions of the federal tax code was unnecessary to demonstrate the correctness of his method of computing unused depreciation. We are satisfied that the *Koch* opinion and its rationale provides sufficient support for the Tax Court's determination to calculate unused depreciation by first applying out-of-pocket expenses to income before depreciation.

Affirmed.