808 A.2d 143 (2002)
354 N.J. Super. 491
RIDER INSURANCE COMPANY, Plaintiff-Respondent,
v.
FIRST TRENTON COMPANIES, Defendant-Appellant, and
New Jersey Citizens Reciprocal Exchange (NJ Cure) and Roy J. Jones, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 2002.
Decided October 25, 2002.
*145 Thomas P. Weidner, Princeton, argued the cause for appellant (Windels, Marx, Lane & Mittendorf, attorneys; Mr. Weidner, of counsel, and Mr. Weidner and Antonio J. Casas, on the brief).
Warren Usdin argued, Livingston, the cause for respondent Rider Insurance Company (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Usdin, of counsel and on the brief). Jacob A. Papay, Jr. argued the cause for respondent New Jersey Citizens Reciprocal Exchange (Gebhardt & Kiefer, attorneys; Mr. Papay, on the brief).
Respondent, Roy J. Jones, submitted no brief.
Before Judges CUFF, LEFELT and WINKELSTEIN.
*144 The opinion of the court was delivered by LEFELT, J.A.D.
This appeal arises out of Roy Jones's motorcycle accident with an unidentified vehicle. Three automobile insurance companies were potentially available to compensate Jones for his injuries caused by the uninsured motorist (UM). One of the potential insurers, First Trenton Indemnity Company, denied coverage based on a UM policy exclusion. In a declaratory judgment action, Judge William Wertheimer invalidated the UM exclusion as contrary to the statutory requirement that all standard automobile insurance policies must contain UM coverage. This action was taken despite the fact that the Commissioner of Banking and Insurance had approved the First Trenton policy containing the UM exclusion. First Trenton appeals, and we affirm.

I.
The facts and pertinent procedural history are relatively straightforward. At the time of his accident, Jones was the named insured on two separate motor vehicle insurance policies. Rider Insurance Company insured Jones's motorcycle, providing UM coverage of $15,000 per person and $30,000 per accident. New Jersey Citizens Reciprocal Exchange (CURE) provided UM coverage for Jones's 1980 Chevrolet and 1983 Cadillac of $100,000 per person and $300,000 per accident. At the time of the accident, Jones was living in his mother's home and was also insured for $50,000 per person and $100,000 per accident as a named driver under his mother's automobile policy with First Trenton.
Rider and Cure eventually agreed to supply pro rata UM coverage for Jones up to $100,000, the maximum on the two policies, and sought additional coverage from First Trenton. Jones's mother's policy with First Trenton, however, contained an exclusion providing the insurer "does not cover bodily injury suffered or property damage incurred by any insured other than you while occupying any vehicle insured by another motor vehicle policy in which that insured was a named insured or relative." First Trenton denied Jones UM coverage under this exclusion.
A declaratory judgment action was brought and eventually summary judgment motions by all three insurance companies came before Judge Wertheimer. The judge granted summary judgment to CURE and Rider and denied summary judgment to First Trenton. The judge found the exclusion inconsistent with the statutory requirement of N.J.S.A. 17:28-1.1 that all motor vehicle insurance policies, *146 except basic policies, must include UM coverage. Consequently, the judge found that First Trenton owed Jones pro rata UM coverage as a resident relative and named driver on his mother's policy. It is from this determination that First Trenton appeals.

II.
The terms of an automobile insurance policy govern the insured's rights to UM coverage so long as the terms do not conflict with the UM statute or its underlying policy. Brown v. Selective Ins. Co., 311 N.J.Super. 210, 213, 709 A.2d 812 (App.Div.1998). In relevant part, the current UM statute provides that "[e]xcept for a basic automobile insurance policy, no motor vehicle liability policy ... shall be issued in this State ... unless it includes coverage ... for the payment of all or part of the sums which persons insured thereunder shall be legally entitled to recover as damages from owners or operators of uninsured motor vehicles...." N.J.S.A. 17:28-1.1(a).
The UM statute was amended in 1983 and 1998. Before the 1983 amendment, the UM statute was different from the current statute in two ways. First, the statute before 1983 permitted "stacking," or the adding together of available UM policy limits, to afford greater coverage for injured persons. The statute now states that where UM coverage is available under more than one policy, "any recovery shall not exceed the higher of the applicable limits of the respective coverages as the limits of each coverage bear to the total of the limits." N.J.S.A. 17:28-1.1(c).
The second way the 1983 amendment changed the previous law was to describe more specifically the Commissioner of Banking and Insurance's powers to approve UM policies. The amendment specified that the Commissioner could approve "terms conditions and exclusions," including those dealing with "unauthorized settlements, nonduplication of coverage, subrogation and arbitration." Id. at 1.1(d). Thus, the 1983 amendment prohibited stacking and gave the Commissioner more specific powers to review UM contract language.
In 1998, the UM statute was again amended to its current form, under a bill known as the Automobile Insurance Cost Reduction Act (AICRA), L. 1998, c. 21, § 71. As one device to reduce the high cost of New Jersey motor vehicle insurance policies, the 1998 legislation provided "for the creation of two insurance coverage options, a basic policy and a standard policy." N.J.S.A. 39:6A-1.1. The basic policy offers minimum coverage options to insureds and need not include UM coverage.
The current legislation as amended in 1983 and 1998 does not provide any indication that the Legislature intended to permit policies to exclude UM coverage, except when an insured voluntarily selects and purchases a basic policy. The cases before and after the statutory amendments support this conclusion.
In Motor Club of Am. Ins. Co. v. Phillips, 66 N.J. 277, 292, 330 A.2d 360 (1974), the Supreme Court found an exclusion clause in violation of the statutory intent of N.J.S.A. 17:28-1.1 and thus unenforceable. Phillips was a passenger who was injured in his host's vehicle, which was involved in an accident with an uninsured motorist. Id. at 280, 330 A.2d 360. Phillips's damages exceeded the policy limits of his host's vehicle and he sought UM recovery under his own policy. This policy, however, contained a provision that applied his policy "only as excess insurance" over any other similar available insurance. Id. at 281, 330 A.2d 360. The Court invalidated this provision, noting *147 that the statute "contains no suggestion of relief from its undertaking in favor of an issuing insurer merely because another insurer had assumed the obligation in favor of the same accident victim." Id. at 292, 330 A.2d 360. The Court concluded that the "statute unambiguously grants the victim prima facie recourse to any and all policies applicable ..." Ibid.
In Beek v. Ohio Cas. Ins. Co., 135 N.J.Super. 1, 4-5, 342 A.2d 547 (App.Div. 1975), aff'd, 73 N.J. 185, 373 A.2d 654 (1977), we relied on Phillips, and struck down another provision that attempted to exclude UM coverage. This exclusion applied when a named insured was operating an owned vehicle that was insured under a different policy. Id. at 3, 342 A.2d 547. We found no distinction between the "excess-escape" clause in Phillips and the second-policy exclusion in Beek, as both were contrary to the statutory intent. Id. at 5, 342 A.2d 547.
The Supreme Court has recognized that "N.J.S.A. 17:28-1.1 serves two important functions, namely, to ease the financial burden on the Unsatisfied Claim and Judgment Fund and to provide insured motorists with protection from uninsured, financially irresponsible motorists." Fernandez v. Selected Risks Ins. Co., 82 N.J. 236, 240, 412 A.2d 755 (1980). Policy exclusions that aim to limit the members of the UM statutory class violate these purposes. Id. at 242, 412 A.2d 755. Moreover, N.J.S.A. 17:28-1.1 must be construed liberally to foster the protection UM affords automobile accident victims. See State Farm v. Zurich Amer. Ins. Co., 62 N.J. 155, 168, 299 A.2d 704 (1973).
Phillips and Beek also permitted stacking of UM policies, and therefore, those portions of the decisions were overruled by the 1983 statutory amendment. See Longo v. Mkt. Transition Facility of N.J., 326 N.J.Super. 316, 325, 741 A.2d 149 (App. Div.1999). It is no longer possible to "stack" or add together all available UM coverages and recover the amount of those stacked coverages. Nevertheless, the conclusion of Phillips and Beek that invalidates policy provisions attempting to limit the situations in which UM coverage is available remains intact. Indeed, we continue to apply this principle.
For example, in Berger v. First Trenton Indem. Co., 339 N.J.Super. 402, 412, 772 A.2d 28 (App.Div.2001), we declined to uphold a "for fee" exclusion in First Trenton's UM policy with a plaintiff who fractured his ribs when the taxi cab in which he was riding stopped suddenly. Plaintiff sought UM coverage, which was denied by First Trenton based on the exclusion. We found that First Trenton's "`for fee' exclusion restricts the coverage otherwise mandated by statute. As such, it is unenforceable." Ibid.
Furthermore, the declaration page of Jones's mother's First Trenton policy names Jones as a driver. There were no indications or warnings on the declaration page that would lead Jones to conclude that he would not be eligible for UM coverage by First Trenton. This reasonable expectation by Jones cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly warns the insured. Lehrhoff v. Aetna, 271 N.J.Super. 340, 347, 638 A.2d 889 (App.Div.1994).

III.
Despite the absence of case law supporting First Trenton's position and a lack of specific statutory authority, First Trenton nevertheless argues that its exclusion was approved by the Commissioner, fosters legislative intent, and must be enforced by this court.
*148 Preliminarily, we question whether the record clearly reflects that the Commissioner has approved this particular exclusion. The Attorney General has not participated in the appeal, and we do not know the Department of Banking and Insurance's specific position on this exclusion. Except for (1) a certification by First Trenton's Compliance and Fraud Prevention Manager stating that the Commissioner approved its automobile insurance policy and (2) a March 19, 1999 letter indicating that the Commissioner approved First Trenton's "Forms Revision," we have no evidence that the Commissioner approved the specific exclusion in issue.
In any event, even if we assume the Commissioner has in fact approved the particular exclusion, First Trenton's argument still must be rejected. It is elementary that an administrative agency derives its powers from legislation, Silverman v. Berkson, 141 N.J. 412, 416-17, 661 A.2d 1266 (1995), cert. denied, 516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995), and may not take any actions that violate statutory requirements. In re Unif. Admin. Procedure Rules, 90 N.J. 85, 94, 447 A.2d 151 (1982). The Commissioner may not approve any insurance policy that would violate the governing statute. Hoglin v. Nationwide Mut. Ins. Co., 144 N.J.Super. 475, 482, 366 A.2d 345 (App.Div.1976). Also, the interpretation of statutes is a judicial, not administrative, function and a court is not bound by an agency's interpretation. Mayflower Sec. Co., Inc. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973).
First Trenton, nevertheless, claims that the Legislature gave the Commissioner responsibility to "balance the competing interestse.g., to fairly compensate accident victims, eliminate duplicative coverage and reduce premiums" by exercising its policy approval functions. We question the breadth of First Trenton's argument.
Even though the Legislature intended the Commissioner to play a role in approving policy language, the Legislature would not have authorized the Commissioner to misapply a statute. Were we to construe the statute as permitting the exclusion of UM coverage when multiple policies are available to the insured, then subparagraph (c) of the pertinent statute requiring pro rata payments when there are additional UM coverages would be surplusage. State v. Thomas, 322 N.J.Super. 512, 519, 731 A.2d 532 (1999), aff'd, 166 N.J. 560, 767 A.2d 459 (2001) (such an interpretation would be disfavored); see also Norman J. Singer, Sutherland Statutory Construction § 46.06 (5th ed.1992).
In addition, the exclusion itself conflicts with the plain language of N.J.S.A. 17:28-1.1(a) that requires all insurance policies except basic policies to cover "all or part" of the damages to be recovered from an uninsured motor vehicle. If the Legislature wanted to limit the number of policies required to provide pro rata contribution or allow standard policies to eliminate UM coverage in certain situations, it could easily have done so. It did not. Consequently, because First Trenton's exclusion violates the statutory intent of N.J.S.A. 17:28-1.1, it must be invalidated.
Affirmed.