824 A.2d 1126 (2003)
361 N.J. Super. 228
Michele CHRISTAFANO, Plaintiff-Respondent,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 2003.
Decided June 17, 2003.
*1128 Harry D. Norton, Jr. argued the cause for appellant (Norton, Arpert, Sheehy & Higgins, attorneys; Mr. Norton, of counsel; Craig L. Chaney, on the brief).
John J. Pisano, Cranford, argued the cause for respondent.
Before Judges BRAITHWAITE, LINTNER and PARKER.
*1127 The opinion of the court was delivered by LINTNER, J.A.D.
We granted defendant New Jersey Manufacturers Insurance Company's (NJM) motion for leave to appeal from a Law Division order setting NJM's pro rata exposure to plaintiff Michele Christafano's claim for uninsured motorist (UM) benefits coverage at $211,500. We hold that the step-down provision contained in the NJM policy is valid and limits NJM's exposure to its prorated share of $25,000. Accordingly, we reverse and remand.
On March 6, 2002, at approximately 2:00 a.m., plaintiff Michele Christafano was traveling west on Route 495 in North Bergen when he was cut off by an unidentified vehicle causing him to swerve and lose control of his vehicle. The car flipped five times and plaintiff was thrown from the vehicle. He suffered a fracture of the cervical spine and a comminuted fracture of the right femur. He was treated at Jersey City Medical Center where a rod was inserted in his right upper leg.
Plaintiff was insured for UM benefits by three separate insurance policies. He was the named insured under a policy issued by State Farm covering his own vehicle with UM limits of $25,000. Additionally, he was covered by a policy issued to his sister by Allstate with UM limits of $100,000[1] and a policy written by NJM issued to his mother covering him as a "family member," with limits of $300,000.[2] Plaintiff requested that each of these companies pay their prorated shares of the highest applicable limit, the $300,000 limit in the NJM policy, pursuant to N.J.S.A. 17:28-1.1c.[3] He also demanded that his claims be arbitrated under the policies' arbitration clauses.
On September 17, 2002, NJM notified plaintiff that its policy "possess[es] a valid step-down provision as approved by the New Jersey Commissioner of Insurance" that limited UM coverage available to plaintiff to the amount available in plaintiff's State Farm policy, $25,000.[4] NJM also advised plaintiff that the $25,000 limit should be prorated among the three insurance companies. The "step-down" provision in the NJM policy reads as follows:
LIMIT OF LIABILITY
*1129 A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident.
However, subject to our maximum limit of liability for this coverage:
1. If:
a. An insured is not the named insured under this policy;
b. That insured is a named insured under one or more other policies providing similar coverage; and
c. All such other policies have a limit of liability for similar coverage which is less than the limit of liability for this coverage;
then our maximum limit of liability for that insured, for all damages resulting from any one accident, shall not exceed the highest applicable limit of liability under any insurance providing coverage to that insured as a named insured.
2. If:
a. An insured is not the named insured under this policy or any other policy;
b. That insured is insured as a spouse or family member under one or more other policies providing similar coverage; and
c. All such other policies have a limit of liability for similar coverage which is less than the limit of liability for this coverage;
then our maximum limit of liability for that insured, for all damages resulting from any one accident, shall not exceed the highest applicable limit of liability under any insurance providing coverage to that insured as a spouse or family member.
Plaintiff filed a complaint and order to show cause in the Law Division seeking to compel NJM to arbitrate the UM claim and to declare defendant's maximum UM exposure to be $211,500. NJM answered, noting that it had agreed to arbitrate the matter but disputed the amount of its prorated share. Granting the relief sought by plaintiff, the motion judge reasoned:
[T]he statute in question, [N.J.S.A. 17:28-1.1c], provides that if an insured has uninsured motorist coverage available under more than one policy any recovery shall not exceed the higher of the applicable limits of the respective coverages, and the recovery shall be prorated between the applicable coverages as the limits of each coverage there to the total of the limits.
And the issue, however, before the court is what is the operative limit of the UM coverage under the NJM endorsement? And the court must be guided by the language of the policy to determine whether or not it is specific, whether or not there is an ambiguity and indeed, if there is an ambiguity to determine what is the probable expectations of the parties to the contract viewed most favorably to the insured purchaser of ... the policy.
....
The language [in the policy] in the court's judgment is ... significantly ambiguous and is subject to an interpretation that the exclusionary provision here is not applicable to the instant situation wherein the other insurance provides coverage to the other person, the plaintiff... as a direct named insured in the amount of $25,000. The language certainly in the court's judgment is capable of an ambiguous interpretation and ... in that event the interpretation must be given most favorably to the insured purchaser of the NJM policy which provides $300,000 in UM/UIM coverage for herself as the named insured and for her family members inclusive obviously in this instance [plaintiff].

*1130 For these reasons the court is of the view consistent with the terms of the statute and consistent with the court's reading of the provisions of the exclusion of the NJM policy ... there is serious question as to the applicability of that UM coverage limitation equivalent to that of named insured at $25,000.
The court therefore will enter an order to compel NJM to arbitrate [plaintiff]'s uninsured motorist claim and will declare that [defendant's] pro rata exposure arising out of the plaintiff's uninsured motorist claim to be capped at the amount at $211,500.
An order memorializing the motion judge's findings was filed on December 5, 2002. While this matter was pending appeal, a panel of three arbitrators found plaintiff twenty percent negligent and defendant eighty percent negligent and awarded plaintiff $320,000.
On appeal, NJM contends that the judge erred in determining that the step-down provision contained in its policy was ambiguous and invalid. Plaintiff counters, asserting that the NJM policy is ambiguous because "it is entirely confusing to define the insured as a family member ... but later claim a limitation in coverage where a family member ... has other coverage which is fortuitously benefitting [NJM] due to the fact that the limits are at a lower level." Plaintiff also claims that the applicable provision runs a foul of N.J.S.A. 17:28-1.1c.
The underlying principles governing interpretation of policies of insurance are well-settled. New Jersey courts have consistently recognized that insurance policies are contracts of adhesion and are subject to special rules of interpretation. Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990); Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 611, 503 A.2d 862 (1986). Policies should be construed liberally in the insured's favor to the end that coverage is afforded to the fullest extent that any fair interpretation will allow. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961). Ambiguities in the language of an insurance policy must be resolved in favor of the insured. Cobra Prods., Inc. v. Fed. Ins. Co., 317 N.J.Super. 392, 400, 722 A.2d 545 (App.Div.1998), certif. denied, 160 N.J. 89, 733 A.2d 494 (1999). "We conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979). In that instance, the policy should be construed to comport with the insured's objectively reasonable expectations of coverage. Gibson v. Callaghan, 158 N.J. 662, 671, 730 A.2d 1278 (1999); Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41, 713 A.2d 1007 (1998); Aubrey v. Harleysville Ins. Cos., 140 N.J. 397, 404, 658 A.2d 1246 (1995); DiOrio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 269, 398 A.2d 1274 (1979).
Conversely, in the absence of an ambiguity, we "should not write for the insured a better policy of insurance than the one purchased." Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529, 562 A.2d 208 (1989). When the terms of an insurance contract are clear, we are to enforce it as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960); Universal Underwriters Ins. Co. v. New Jersey Mfrs. Ins. Co., 299 N.J.Super. 307, 312, 690 A.2d 1104 (App. Div.), certif. denied, 151 N.J. 73, 697 A.2d 546 (1997).
In reaching his conclusion that the step-down provision in question was ambiguous, the motion judge mistakenly focused on the last sentence in section A.2 of LIMIT OF LIABILITY dealing with an insured who: (a) is not a named insured under the *1131 NJM or any other policy and (b) is insured as a spouse or family member under one or more other policies providing similar coverage with (c) limits of liability less than the NJM policy. Instead, the applicable provision is found in section A.1, which applies to an insured who: (a) is not the named insured under the NJM policy, but (b) is a named insured under one or more other policies providing similar coverage with (c) limits of liability less than the NJM policy.
Because plaintiff is a named insured under the State Farm policy, section A.2 does not apply. Section A.1, however, applies because plaintiff is a named insured under another policy having similar coverage but smaller liability limits, and is not a named insured under the NJM policy. Moreover, the two sections are consistent with one another because section A.1 applies to those persons who are a named insured in another policy and not a named insured in the NJM policy, while section A.2 expressly applies to those persons who are not a named insured in any policy but are otherwise insured as a family member.
We conclude that section A.1 is clear and unambiguous and limits NJM's UM coverage to that afforded by the State Farm policy because the three enumerated conditions are met. Namely, plaintiff is not the named insured under the NJM policy, but is a named insured under the State Farm policy, which provides UM coverage with lesser limits of liability than the NJM policy.
We next consider whether the step-down provision, despite its unambiguous language, is invalid under N.J.S.A. 17:28-1.1. In construing an insurance policy, we must "ensur[e][its] conformity to public policy and principles of fairness." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992). "The terms of an automobile insurance policy govern the insured's rights to UM coverage so long as the terms do not conflict with the UM statute or its underlying policy." Rider Ins. Co. v. First Trenton Cos., 354 N.J.Super. 491, 495, 808 A.2d 143 (App.Div.2002). N.J.S.A. 17:28-1.1c governs the distribution of UM coverage available under more than one policy:
If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits. (Emphasis added).
N.J.S.A. 17:28-1.1, which requires a standard policy to provide UM coverage limits of $15,000 for injury or death to one person and $30,000 for injury or death to more than one person, "`serves two important functions, namely, to ease the financial burden on the Unsatisfied Claim and Judgment Fund and to provide insured motorists with protection from uninsured, financially irresponsible motorists.'" Rider, supra, 354 N.J.Super. at 497, 808 A.2d 143 (quoting Fernandez v. Selected Risks Ins. Co., 82 N.J. 236, 240, 412 A.2d 755 (1980)).
Plaintiff relies on Rider, arguing that the provision in the NJM policy renders the clause of N.J.S.A. 17:28-1.1c requiring the pro-rating of coverage surplusage. Plaintiff's argument is misplaced. In Rider, we held that a policy provision that eliminates UM coverage when multiple policies are available is invalid as such a provision would render subparagraph c of N.J.S.A. 17:28-1.1 surplusage. Id. at 500, 808 A.2d 143. Here, NJM's step-down provision does not eliminate or exclude UM coverage when other policies are available nor does it seek to avoid pro rata contribution as required by the statute. Instead, the policy provides for pro rata *1132 contribution of its UM coverage with the other available policies and only proscribes the maximum liability limits.
We acknowledge that N.J.S.A. 17:28-1.1c "must be construed liberally to foster the protection UM affords automobile accident victims." Id. at 497-98, 808 A.2d 143. However, "in the absence of a statutory prohibition to the contrary, an insurance company has a right to impose whatever conditions it desires prior to assuming its obligations." Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J.Super. 409, 419, 638 A.2d 924 (App.Div.1994). It is not our function "`to make a better contract for the parties than they themselves have seen fit to enter into or to alter it for the benefit of one party and to the detriment of the other.'" Id. at 416, 638 A.2d 924 (quoting Flynn v. Hartford Fire Ins. Co., 146 N.J.Super. 484, 488, 370 A.2d 61 (App.Div.), certif. denied, 75 N.J. 5, 379 A.2d 236 (1977)).
In Magnifico v. Rutgers Casualty Insurance Co., 153 N.J. 406, 710 A.2d 412 (1998), the plaintiff passenger sought underinsured motorist coverage (UIM) provided in the policy covering the host vehicle that had higher limits than the policy she had purchased as the named insured for her own vehicle. The Court in Magnifico noted that the carrier insuring the plaintiff as a passenger in the host vehicle could have included language in its policy limiting the passenger's recovery to the amount of coverage provided in the policy insuring her own vehicle. Id. at 418, 710 A.2d 412; see also Macchi v. Connecticut Gen. Ins. Co., 354 N.J.Super. 64, 804 A.2d 596 (App.Div.) (holding that a similar step-down provision did not apply because it was illusory to claim that the company was the named insured when the plaintiff was the designated primary user of a Chevrolet Corvette supplied for her personal use by a company owned by her husband), certif. denied, 175 N.J. 79, 812 A.2d 1111 (2002). Like UIM coverage, UM coverage in excess of the $15,000/$30,000 mandatory minimum is required to be provided as an option by the insurer. N.J.S.A. 17:28-1.1b. Applying the same rationale used by the Court in Magnifico, we conclude that the step-down provision limiting the UM coverage to the amount of coverage in the State Farm policy does not run afoul of the provisions of N.J.S.A. 17:28-1.1. Accordingly, we reverse and remand for entry of an order declaring the applicable UM coverage limit available under the NJM policy to be $25,000, prorated pursuant to N.J.S.A. 17:28-1.1c.
Reversed and remanded.
NOTES
[1] Neither State Farm nor Allstate are parties to this appeal.
[2] The definition of insured in the NJM policy includes "[y]ou or any family member."
[3] Defendant's prorated share of $300,000 equals $211,500, Allstate's $70,500, and State Farm's $18,000.
[4] Defendant presented no evidence of the approval of the step-down provision by the Commissioner of Insurance. Nonetheless, such approval is not determinative of the validity of the provision. Rider Ins. Co. v. First Trenton Cos., 354 N.J.Super. 491, 499, 808 A.2d 143 (App.Div.2002).