839 A.2d 83

METLIFE AUTO AND HOME, PLAINTIFF–RESPONDENT, v.
DONALD PALMER, DEFENDANT, AND TRAVELERS PROP-
ERTY CASUALTY COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 13, 2003—Decided January 6, 2004.

Before Judges KING, LINTNER and LISA.

*Edward H. Keiper* argued the cause for appellant (*Alan P. Bruce,* on the brief).

*Michael A. Katz* argued the cause for respondent (*Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride,* attorneys; *Mr. Katz,* of counsel and on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

The issue to be decided in this appeal, not previously addressed in this State, is whether an insurance carrier providing specialty insurance for an antique automobile can avoid paying pro rata contribution under the anti-stacking provision, *N.J.S.A.* 17:28–1.1c, by excluding uninsured motorist (UM) coverage for injuries sustained by its insured while occupying an owned vehicle not insured by the antique automobile policy. We hold that antique automobile insurance policies that limit the use of the insured vehicle and are offered at a significantly reduced premium are valid and not subject to the anti-stacking provision, *N.J.S.A.* 17:28–1.1c. Therefore, such policies may include other insurance clauses that exclude participation in pro rata apportionment with other available insurance. The underlying facts are undisputed.

Defendant Travelers Property Casualty Company (Travelers) paid UM benefits totaling $319,500 to its insured, Donald Palmer, for injuries he sustained while occupying a Ford van it insured. At the time of the accident, plaintiff, MetLife Auto and Home (MetLife), administered an Antique Automobile Insurance Policy underwritten by St. Paul Mercury Insurance Company (St.Paul) issued to Donald's father, Robert, insuring Robert's 1957 Ford Thunderbird at a significantly lower cost than a standard automobile liability policy.[1] The policy provided bodily injury and proper-

---

[1] The renewal application indicates that the premium charge for the policy was $279.60.

ty damage liability and UM limits of $300,000 for each accident. The declaration page names Robert Palmer as the named insured and the renewal application designates the drivers as Robert Palmer and JoAnn Palmer. Travelers notified MetLife that it was seeking MetLife's participation in contribution to the extent of MetLife's pro rata share and amount equal to $73,730.80.

The liability coverage section of the MetLife policy defines "insured" as the named insured, and "any 'family member' for the ownership maintenance or use of 'your covered auto.'" Covered auto is defined as "[a]ny 'antique vehicle', 'classic vehicle' or 'special interest vehicle' shown in the Declarations." The section affording UM coverage provides:

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

. . . .

B. "Insured" as used in this Part means:

1. Any person "occupying" "your covered auto."

. . . .

EXCLUSIONS

A. We do not provide Uninsured Motorist Coverage for "bodily injury" sustained by any person:

1. While "occupying," or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy.

MetLife declined to participate in contribution asserting that it did not have to participate in pro rata contribution because Donald Palmer was operating an automobile other than his father's Thunderbird.

MetLife filed a declaratory judgment complaint seeking to enforce its exclusion and Travelers responded with an answer and counterclaim demanding contribution from MetLife of its proportionate share, under N.J.S.A. 17:28–1.1c. Both parties filed cross-motions for summary judgment, and in a memorandum of decision dated November 13, 2002, the motion judge found the exclusion in MetLife's policy valid, relying on the holding reflected in an

unreported December 2000 Law Division decision in a similar case. Travelers moved for reconsideration, citing *Rider Insurance Co. v. First Trenton Cos.*, 354 *N.J.Super.* 491, 808 *A.*2d 143 (App.Div.2002). On January 10, 2003, the judge denied Travelers' motion, finding that the decision in *Rider* was not dispositive of the issue.

On appeal, Travelers contends that the MetLife exclusion is invalid because it (1) runs counter to the reasonable expectation of the parties to the MetLife policy; and (2) violates the provisions of *N.J.S.A.* 17:28–1.1, which mandates the inclusion of UM coverage in every motor vehicle policy and establishes a statutory apportionment scheme between carriers. MetLife counters these arguments, essentially claiming that the policy language does not convey a reasonable expectation of coverage to Donald Palmer, is not adverse to the applicable statutory provisions, and was approved by the Commissioner of Insurance. Following appellate argument we granted MetLife's motion to supplement the record with a letter dated October 17, 1990, from the Commissioner of Insurance approving, effective January 1, 1991, the MetLife policy language. We examine these issues *seriatim*.

Generally, "[u]nambiguous insurance contracts are enforced in accordance with the reasonable expectations of the insured." *Stiefel v. Bayly, Martin & Fay of Conn., Inc.*, 242 *N.J.Super.* 643, 651, 577 *A.*2d 1303 (App.Div.1990). The "fundamental principle of insurance law is to fulfill the objectively reasonable expectations of the parties" to the insurance contract. *Werner Indus., Inc. v. First State Ins. Co.*, 112 *N.J.* 30, 35, 548 *A.*2d 188 (1988); *see also Gibson v. Callaghan*, 158 *N.J.* 662, 671, 730 *A.*2d 1278 (1999); *American Motorists Ins. Co. v. L–C–A Sales Co.*, 155 *N.J.* 29, 41, 713 *A.*2d 1007 (1998); *Aubrey v. Harleysville Ins. Cos.*, 140 *N.J.* 397, 404, 658 *A.*2d 1246 (1995); *DiOrio v. New Jersey Mfrs. Ins. Co.*, 79 *N.J.* 257, 269, 398 *A.*2d 1274 (1979). Courts will enforce restrictive terms of a policy so long as they are (1) consistent with the objectively reasonable expectations of the parties, *DiOrio, supra*, 79 *N.J.* at 269, 398 *A.*2d

1274, and (2) "not in conflict with the provisions of the statute or its underlying policy," *Brown v. Selective Insurance Co.*, 311 *N.J.Super.* 210, 213, 709 *A.*2d 812 (App.Div.1998). Here, the policy language was unambiguous, clearly limiting UM coverage to injuries sustained by occupants of the 1957 Thunderbird and excluding injuries sustained while occupying another motor vehicle owned by the named insured or a family member not covered by the policy.

We turn our attention to Travelers' contention that the policy language runs afoul of *N.J.S.A.* 17:28–1.1. Travelers places heavy reliance on our recent decision in *Rider, supra,* 354 *N.J.Super.* 491, 808 *A.*2d 143. The pertinent provisions of *N.J.S.A.* 17:28–1.1 are:

> a. [N]o motor vehicle liability policy or renewal of such policy of insurance, including a standard liability policy for an automobile as defined in section 2 of P.L.1972, c. 70 (C.39:6A–2), insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be issued in this State with respect to any motor vehicle registered or principally garaged in this State unless it includes coverage . . . as follows:
>
> . . . .
>
> (2) . . . for payment of *all or part of the sums* which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured motor vehicle, or hit and run motor vehicle, as defined in section 18 of P.L.1952, c. 174 (C.39:6–78), because of bodily injury . . . sustained by. the insured, caused by accident and arising out of the ownership, maintenance, operation or use of such uninsured or hit and run motor vehicle anywhere within the United States or Canada. . . .
>
> All motor vehicle liability policies . . . shall also include coverage for the payment of all or part of the sums *which persons insured thereunder* shall be legally entitled to recover as damages from owners or operators of uninsured motor vehicles . . . because of injury. . . .
>
> . . . .
>
> c. Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to. the insured. *If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.*

d. Uninsured and underinsured motorist coverage shall be subject to the policy terms, conditions and exclusions approved by the Commissioner of Banking and Insurance, including, but not limited to, unauthorized settlements, *nonduplication of coverage,* subrogation and arbitration. (Emphasis added.)

In *Rider,* Roy Jones was injured in an accident with an unidentified hit-and-run motor vehicle while operating his motorcycle insured by Rider Insurance Company. *Rider, supra,* 354 *N.J.Super.* at 494, 808 *A.*2d 143. Rider's policy provided UM coverage in the amount of $15,000 per person and $30,000 per accident. *Ibid.* Jones also owned a 1980 Chevrolet and a 1983 Cadillac insured by the New Jersey Citizens Reciprocal Exchange providing $100,000/ $300,000 in UM coverage. *Id.* at 494–95, 808 *A.*2d 143. At the time of Jones's accident he was living with his mother and was insured as a named driver under his mother's automobile policy with First Trenton, providing $50,000 per person and $100,000 per accident in UM coverage. *Id.* at 495, 808 *A.*2d 143. The First Trenton policy contained an exclusion stating that it did "not cover bodily injury suffered or property damage incurred by any insured other than you while occupying any vehicle insured by another motor vehicle policy in which that insured was a named insured or relative." *Ibid.*

In affirming the Law Division decision requiring First Trenton to contribute its pro rata share under *N.J.S.A.* 17:28–1.1, we noted that there was no warning on First Trenton's declaration page naming Jones as a driver that would lead him to conclude that he would be ineligible for UM benefits under the policy and that his reasonable expectation of coverage could not be contradicted by the policy's boilerplate without a clear warning on the declaration page. *Rider, supra,* 354 *N.J.Super.* at 498, 808 *A.*2d 143. We went on to examine the exclusion in light of the provisions of *N.J.S.A.* 17:28–1.1, pointing out that First Trenton's exclusion conflicted with section a. of *N.J.S.A.* 17:28–1.1, which provides that "[a]ll motor vehicle liability policies, except basic automobile insurance policies, shall also include coverage for the payment of *all or part* of the sums which persons insured thereunder shall be legally entitled to recover as damages from owners or operators of

uninsured motor vehicles ... because of injury...." *Id.* at 500, 808 *A.*2d 143. We concluded that "[i]f the legislature wanted to limit the number of policies required to provide pro rata contribution or allow standard policies to eliminate UM coverage in certain situations, it could easily have done so," rather than provide for pro rata contribution from policies providing available coverage in section c. *Ibid.*

Travelers contends that our holding in *Rider* is controlling as is the holding in *Motor Club of America Insurance Co. v. Phillips,* 66 *N.J.* 277, 294, 330 *A.*2d 360 (1974), in which the Court held that other insurance escape clauses are invalid as repugnant to *N.J.S.A.* 17:28–1.1. *See also Beek v. Ohio Cas. Ins. Co.,* 135 *N.J.Super.* 1, 4–5, 342 *A.*2d 547 (App.Div.1975), *aff'd,* 73 *N.J.* 185, 373 *A.*2d 654 (1977). It maintains that MetLife's exclusion likewise runs counter to the purpose served by the uninsured motorist statute.

Initially, we point out that the facts in *Rider* are distinguishable from the facts before us. Unlike the claimant in *Rider,* Donald Palmer is not a named insured on the declaration page nor is he designated as a driver of the vehicle insured. Moreover, the policy is not a standard automobile policy but a specialty policy providing coverage for an antique automobile, twenty-five years old or older, at a significantly lower premium. Coverage is conditioned on a Limitation of Use provision, which permits MetLife to disclaim if the vehicle is used for normal driving or races; if it has been altered from its original condition; if it is driven in excess of 2500 miles per year; or if it is used for business or commercial purposes. According to the insurance agent specializing in antique motor car insurance, the policy was issued conditioned upon the purchaser maintaining an independent "standard or regular motor vehicle insurance policy as well, to cover motor vehicles that are intended for regular, rather than limited, use." Unlike the circumstances in *Rider,* there is no evidence establishing a reasonable expectation of coverage on behalf of the claimant.

N.J.S.A. 17:28–1.1 serves two legislative purposes. *Shaw v. City of Jersey City,* 174 *N.J.* 567, 571, 811 *A.*2d 404 (2002). "It is designed to 'provide maximum remedial protection to the innocent victims of financially irresponsible motorists' and to 'reduce the drain on the financially-troubled Unsatisfied Claim and Judgment Fund.'" *Ibid.* (citations omitted). Here, the exclusion sought to be validated essentially bars UM coverage for injuries sustained by an insured or family member while occupying an owned vehicle other than the antique vehicle covered by the policy; it does not prevent the claimant from obtaining the maximum remedial protection nor does it place any additional strain on the Unsatisfied Claim and Judgment Fund. In other words, it simply relies on the coverage expressly afforded by Travelers in the standard automobile policy issued to its insured and relieves MetLife from participating in pro rata contribution.

Our determination on this appeal is limited to Travelers' entitlement to a pro rata contribution. Donald Palmer is not seeking coverage from the MetLife policy. Further, issuance of the policy was conditioned on the insured maintaining an independent standard insurance policy covering motor vehicles that are intended for regular, rather than limited, use. Therefore, we need not address the validity of the provisions of the MetLife policy, which would deny Donald Palmer UM coverage in the unlikely situation where he is injured by an uninsured vehicle while he is not occupying the Thunderbird and there is no other UM coverage available. (For example if he were struck as a pedestrian by an uninsured vehicle and the 1957 Thunderbird is the only vehicle in the household.)

Travelers contends that the other insurance exclusion in the MetLife policy is contrary to the legislative intent expressed in the provisions of *N.J.S.A.* 17:28–1.1c, which mandates pro-rating of coverage between "applicable coverages," as those limits bear to the highest applicable limits of other UM coverage available to the insured. However, we conclude that the MetLife policy is not "applicable coverage" as envisioned by *N.J.S.A.* 17:28–1.1c. Not

only does MetLife's policy specifically exclude coverage when an insured is occupying a vehicle owned by the insured or a family member who is not insured by its policy, but it conditions coverage on continued maintenance of a standard policy covering other vehicles used by the insured on a regular basis.

Several of our sister States have confronted the same issue with varying results. Florida, Louisiana, New Hampshire, and Pennsylvania have enforced the restrictive language in similar antique automobile policies as against the named insured seeking to recover UM benefits. *Martin v. St. Paul Fire & Marine Ins. Co.*, 670 *So.*2d 997 (Fla.Dist.Ct.App.1996); *Sanner v. Zurich–Am. Ins. Co.*, 657 *So.*2d 252 (La.Ct.App.), *writ denied* 660 *So.*2d 852 (La. 1995); *Turner v. St. Paul Prop. & Liab. Ins. Co.*, 141 *N.H.* 27, 676 *A.2d* 109 (1996); *St. Paul Mercury Ins. Co. v. Corbett*, 428 *Pa.Super.* 54, 630 *A.2d* 28 (1993). Minnesota, on the other hand, has found that UM coverage is provided to an insured for accidents not involving the antique auto. *State Farm Mut. Auto. Ins. Co. v. Zurich Ins. Co.*, 439 *N.W.2d* 751, 754 (Minn.Ct.App.1989). However, the Minnesota court permitted the antique automobile policy to enjoy favorable treatment when apportioning contribution with a standard automobile policy. *Ibid.* By contrast, Wisconsin has refused to enforce similar restrictions in an antique automobile policy, holding that they violate statutory provisions permitting stacking of UM coverage. *St. Paul Mercury Ins. Co. v. Zastrow*, 166 *Wis.*2d 423, 480 *N.W.2d* 8 (1992).[2]

As we noted in *Rider*, the intent of the Legislature was to require pro rata contribution amongst carriers providing "standard policies." *Rider, supra*, 354 *N.J.Super.* at 500, 808 *A.*2d 143. The states which have validated the restrictive provisions of antique automobile insurance have essentially agreed that "a

---

[2] *Zastrow* has since been superceded by Wis. Stat. § 632.32(5)(f)-(5)(j), which validates anti-stacking and reducing clauses to "avoid the duplication of benefits permitted under prior case law," and authorizes the exclusion of uninsured motorist coverage under certain circumstances. *Blazekovic v. City of Milwaukee*, 234 *Wis.*2d 587, 610 *N.W.2d* 467, 471–72 (2000).

specialty or limited use policy such as the antique automobile policy" is "distinguish[able] from an ordinary policy covering a personal use automobile" because the coverage is limited to activities associated with antique cars, a specific mileage allotment and a corresponding premium reduction. *Corbett, supra,* 630 *A.2d* at 32. These restrictions do not contradict the public policy of this State as our Legislature has provided a special classification for such vehicles. A motor vehicle, which is "at least twenty-five years old ... owned as a collector's item and used solely for exhibition and educational purposes by the owner" is considered to be an "historic motor vehicle." *N.J.S.A.* 39:3–27.3. Owners of "historic motor vehicles" may register their vehicles at a reduced registration fee and obtain specially designated historic license plates. *N.J.S.A.* 39:3–27.4. Thus, like the restricted insurance coverage, these statutes recognize that the limited use of antique automobiles should not subject them to the same costs associated with standard motor vehicles. Further, they express the legislative desire to encourage the maintenance of these vehicles for their educational and historical value.

Finally, although the Commissioner has "no power to approve a provision violative of the statutory intent," where "the question of statutory intent remains open" the Commissioner's approval is evidential. *Motor Club, supra,* 66 *N.J.* at 286, 330 *A.*2d 360. In such situations, a reviewing court should typically defer to an administrative agency's expertise. *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 587, 538 *A.*2d 794 (1988). Accordingly, we are satisfied that the MetLife policy provision excluding it from participating in pro rata contribution does not offend the UM statutory purpose or intent and is not repugnant to *N.J.S.A.* 17:28–1.1.

Affirmed.