884 A.2d 229

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, PLAINTIFF–RESPONDENT, v. BERNARD JEFFERS AND EUGENE WORTHINGTON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 26, 2005—Decided October 18, 2005.

---

[7] Although it is ordinarily preferable for the judge who presided over the underlying action also to decide any fee dispute between the attorney and client because of that judge's familiarity with the course of pretrial and trial proceedings, there may be circumstances in which it would be impractical or inappropriate for the original trial judge also to hear the fee dispute. We express no opinion whether the trial judge's referral to the ethics committees in this case is such a circumstance. We leave the determination of which judge should preside over the hearing on the remand to the Assignment Judge or Presiding Judge of the Family Part.

14

Before Judges LINTNER, PARRILLO and HOLSTON.

*John A. Sakson* argued the cause for appellant (*Stark & Stark*, attorneys; *Mr. Sakson*, on the brief).

*JoAnn Katzban* argued the cause for respondent (*Garrity, Graham, Favetta & Flinn*, attorneys; *Ms. Katzban*, of counsel and on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

Defendant, Bernard Jeffers, a Pennsylvania resident, appeals from the grant of summary judgment in favor of plaintiff, National Union Fire Insurance Company of Pittsburgh (National Union), declaring that the commercial auto policy issued by National Union to defendant's employer in New Jersey did not provide additional underinsurance (UIM) coverage over and above that which was provided by defendant's personal policy issued in Pennsylvania. We reverse because the UIM coverage provided to defendant by his Pennsylvania policy was not "similar" to that provided by the National Union policy and thus National Union's step-down provision limiting coverage was not triggered.

The facts are undisputed. Defendant was operating a vehicle owned by his employer, Schiavone Buckley Cornell, when he was

involved in an accident on the Ben Franklin Bridge. Defendant filed a Law Division complaint for personal injuries against the operators of the other vehicles, one was uninsured and the other maintained a liability policy issued by GSA Insurance Company (GSA) with limits of $100,000 per person and $300,000 per accident. Eventually, GSA deposited its $100,000 policy limits with the court.

At the time of the accident, defendant was covered for UIM benefits by two separate insurance policies. He was the named insured under a Pennsylvania policy issued by Harbor Specialty Insurance Company (Harbor Specialty) covering his own vehicle with UM and UIM limits of $15,000/$30,000. Additionally, although not a named insured, he was covered for New Jersey UIM benefits under the National Union policy as a person " 'occupying' a covered 'auto.' " The National Union policy had UM and UIM limits of $1,000,000,000 and contained the following "step-down" provision.

D.  Limit of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the Limit of Insurance shown in the Schedule or Declarations for Uninsured Motorists Coverage and Underinsured Motorists Coverage is the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle".

a. However, subject to our maximum Limit of Insurance for this coverage, if:

(1) An "insured" is not the individual named insured under this policy; [and]

(2) That "insured" is an individual named insured under one or more other policies *providing similar coverage;* and

(3) All such other policies have a limit of insurance for *similar coverage* which is less than the Limit of Insurance for this coverage;

then the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle" shall not exceed the highest applicable limit of insurance under any coverage form or policy providing coverage to that "insured" as an individual named insured. (emphasis added)

The National Union policy defined underinsured motor vehicle as

a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of an "accident" *but its limit of liability is less than the highest applicable limit of liability under any coverage form or policy providing coverage to that "insured" as an individual named insured.* (emphasis added)

The Harbor Specialty policy covering defendant's personal vehicle defined underinsured motor vehicle as

> a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident *but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.* (emphasis added)

The Harbor Specialty policy also contained a step-down provision in the underinsurance coverage section under the subtitle **Limit Of Liability.** It provided in pertinent part:

> B. The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. . . .

National Union filed a declaratory judgment complaint seeking to invoke its step down provision and limit defendant's UIM benefits to the $15,000 limit provided in his personal automobile policy. Defendant answered and counterclaimed, claiming that he was entitled to National Union's UIM coverage limit totaling $1,000,000,000. Relying upon a Joint Statement of Uncontested Material Facts, both parties filed motions for summary judgment. At oral argument on the motions, defendant relied on the unreported Appellate Division opinion decided on January 21, 2004, *CNA Insurance Co. v. State Farm Mutual Insurance Co.* The motion judge noted that although the facts in *CNA* were essentially the same as those before him, defendant had chosen not to purchase UIM coverage greater than $15,000 and had no expectation of greater coverage because he never saw his employer's policy or paid the premium. He concluded that defendant was limited to receiving UIM benefits in an amount no greater than the amount he saw fit to purchase for himself.

On appeal, defendant urges us to follow the holding in *CNA.* He concedes that he was not a "named insured" under the National Union policy and maintains that our decision in *CNA* is not contrary to our other decisions validating the step-down provisions in policies issued in New Jersey for UIM benefits because the UIM coverage provided in his Pennsylvania policy was not "similar" to that provided by National Union in its New Jersey UIM

policy. National Union counters, asserting: (1) the motion judge was not compelled to follow *CNA* and defendant's reliance on it was misplaced; (2) its policy's step-down provision expressly limited defendant to the limits of his own automobile policy and similar step-down provisions have been upheld by us, specifically in *Pinto v. New Jersey Manufacturers Insurance Co.*, 365 *N.J.Super.* 378, 839 *A.*2d 134 (App.Div.2004), *aff'd*, 183 *N.J.* 405, 874 *A.*2d 520 (2005), *Christafano v. New Jersey Manufacturers Insurance Co.*, 361 *N.J.Super.* 228, 824 *A.*2d 1126 (App.Div.2003), *Botti v. CNA Insurance Co.*, 361 *N.J.Super.* 217, 824 *A.*2d 1120 (App.Div. 2003); and (3) defendant's own policy provided that his UIM limits are to be reduced by the sums paid by the tortfeasor's liability, which far exceeded his $15,000 coverage.

█ An unpublished opinion does not constitute precedent nor is it binding upon us unless it is required to be followed by reason of res judicata, collateral estoppel, the single controversy doctrine, or similar principle of law. *R.* 1:36–3. However, the rule permits an unpublished opinion to be called to a trial court's attention as secondary research so long as the party using the unpublished opinion provides all parties and the court with a copy of the full text of the opinion, as well as any other favorable and unfavorable relevant unpublished material known to exist. *Falcon v. American Cyanamid*, 221 *N.J.Super.* 252, 261 n. 2, 534 *A.*2d 403 (App.Div.1987). Plaintiff does not assert that defendant failed to provide copies of either the *CNA* decision or other relevant unpublished opinions. Instead, it asserts that the motion judge correctly determined that *CNA* was not binding.

█ Like the facts here, the claimant in *CNA* was a resident of Pennsylvania and was covered by a personal automobile UIM policy issued in Pennsylvania.[1] Likewise, the vehicle operated by the claimant in *CNA*, which was leased to his employer, contained commercial UIM coverage limits of $1,000,000,000 with the claim-

---

[1] The Pennsylvania policy in *CNA* was not issued to the claimant, but to his wife and covered the claimant as a resident relative.

ant's employer listed as the named insured. In *CNA*, the employer's UIM policy issued in New Jersey contained essentially the same step-down provision as that in the National Union policy. The decision in *CNA* turned, in large part, on whether the claimant's Pennsylvania UIM coverage was similar to the UIM coverage provided in New Jersey. Concluding that the UIM coverage provided in the claimant's Pennsylvania policy was not similar to the UIM coverage provided by the claimant's New Jersey employer's policy, the appellate panel determined that the step-down provision in the employer's policy was not triggered. We agree with the analysis enunciated in *CNA*, find it persuasive, and reach the same conclusion here.

National Union's step-down clause is activated and its limits are reduced, provided defendant is not a named insured under the National Union policy and he is insured by a policy providing similar coverage that has lower limits than those provided by the National Union policy. Although defendant is not a named insured under the National Union policy and is personally insured by the Harbor Specialty policy with lower UIM limits, the two UIM policies do not provide similar coverage. Instead, the Harbor Specialty policy provides excess coverage while the National Union policy affords gap coverage.

Under New Jersey law, injured parties are protected from underinsured drivers up to the limits they choose to purchase for themselves. *Bauter v. Hanover Ins. Co.*, 247 *N.J.Super.* 94, 96, 588 *A.2d* 870 (App.Div.), *certif. denied*, 126 *N.J.* 335, 598 *A.2d* 893 (1991). *N.J.S.A.* 17:28–1.1e provides in relevant part:

A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he [or she] has recovered under all bodily injury liability insurance or bonds[.]

Thus, underinsured motor vehicle is defined both by statute and the National Union policy as dependent upon the limits of liability insurance provided to the party at fault and that available to the claimant. Under our law and the provisions of the National Union policy, the UIM coverage fills the gap between lower liability limits and the higher underinsurance coverage purchased by the claimant.

In Pennsylvania, 75 *Pa. Cons.Stat. Ann.* § 1702 defines an underinsured motor vehicle as "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." *Allwein v. Donegal Mut. Ins. Co.*, 448 *Pa.Super.* 364, 671 *A.*2d 744, 747–48, *appeal denied*, 546 *Pa.* 660, 685 *A.*2d 541 (1996). Because the Pennsylvania statute "defines underinsured coverage in terms of the damages sustained," it has been interpreted as providing excess insurance rather than gap coverage. *Id.* at 748–49. The Harbor Specialty policy defining an "underinsured motor vehicle" as one where the liability limits of the responsible party is "not enough to pay the full amount the 'insured' is legally entitled to recover as damages" is consistent with Pennsylvania law.

National Union places heavy reliance upon our decisions in *Pinto, Christafano,* and *Botti,* validating comparable step-down provisions limiting recovery of those not qualifying as a "named insured" to the limits found in their personal UIM policies. However, in all three cases, the personal UIM policies were issued in New Jersey and provided similar gap-filling UIM coverage. Contrary to National Union's contention, we are not concerned with the validity of its step-down provision but with its interpretation. We are governed by well settled principles when construing the meaning of policy language. As pointed out in *Christafano:*

New Jersey courts have consistently recognized that insurance policies are contracts of adhesion and are subject to special rules of interpretation. Policies should be construed liberally in the insured's favor to the end that coverage is afforded to the fullest extent that any fair interpretation will allow. Ambiguities in the language of an insurance policy must be resolved in favor of the insured. "We conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of cover-

age." In that instance, the policy should be construed to comport with the insured's objectively reasonable expectations of coverage.

Conversely, in the absence of an ambiguity, we "should not write for the insured a better policy of insurance than the one purchased." When the terms of an insurance contract are clear, we are to enforce it as written.

[*Christafano, supra*, 361 *N.J.Super.* at 234–35, 824 *A.2d* 1126 (internal citations omitted).]

Here, the clear and unambiguous language in National Union's policy required that the Harbor Specialty policy afford similar coverage in order to trigger the step-down provision.

National Union concedes that the definition of "underinsured" is different in each policy. However, it argues that the results of applying its step-down provision would be the same as that derived from application of the step-down provision found in the Harbor Specialty UIM policy under Limits of Liability. The Harbor Specialty policy expressly stated that the liability limits "shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." National Union asserts that because the $100,000 that defendant received from the tortfeasor exceeded his $15,000 UIM limits, he is not entitled to any further payment under either the step-down provision in his policy or that set forth in the National Union policy. National Union's contention is misplaced.

■ Concluding that a similar provision would violate Pennsylvania's public policy, the Superior Court of Pennsylvania observed that " '[u]nderinsurance coverage only makes sense if such amount is set-off against the total actual damages suffered by [claimant]. To allow set-off against his underinsurance coverage renders such coverage a nullity.' " *Allwein, supra*, 671 *A.2d* at 751 (quoting *Ober v. Aetna Cas. & Sur. Co.*, 766 *F.Supp.* 342, 348 (W.D.Pa. 1990)), *aff'd o.b.*, 944 *F.2d* 898 (3d Cir.1991). Thus, the similar language in the Harbor Specialty policy has no effect. It does not transform defendant's Pennsylvania UIM policy from excess to gap coverage. Although the amount to which defendant is entitled from the tortfeasor's policy and his personal UIM policy may reduce National Union's exposure, defendant is eligible under the

National Union policy to the full limits of its coverage. Defendant's total actual damages have not been determined. Accordingly, we reverse and remand for further proceedings.